1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PROGRESSIVE CASUALTY INSURANCE COMPANY, A OHIO CORPORATION; DOES 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOHN DOE

E-FILED
2/16/2021 4:35 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
21CV377848
Reviewed By: R. Tien
Envelope: 5848811

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Santa Clara Superior Court<br>191 North First Street, San Jose, CA 95113 | CASE NUMBER: *(Número del Caso):*<br>**21CV377848** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Steven M. Tindall, Gibbs Law Group LLP, 505 14th Street, Suite 1110, Oakland, CA 94612, (510) 350-9700

| DATE:<br>*(Fecha)* 2/16/2021 4:35 PM   Clerk of Court | Clerk, by<br>*(Secretario)* R. Tien | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Progressive Casualty Insurance Company, an Ohio Corporation

under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Steven M Tindall (187862)<br>GIBBS LAW GROUP LLP<br>505 14th Street, Suite 1110, Oakland, CA 94612<br><br>TELEPHONE NO.: (510) 350-9700    FAX NO. *(Optional):* (510) 350-9701<br>ATTORNEY FOR *(Name):* John Doe | *FOR COURT USE ONLY* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: DTS

**Electronically Filed**
**by Superior Court of CA,**
**County of Santa Clara,**
**on 2/16/2021 4:35 PM**
**Reviewed By: R. Tien**
**Case #21CV377848**
**Envelope: 5848811**

CASE NAME:
John Doe v. Progressive Casualty Insurance Company, a Ohio Corporation; and Does 1-50

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** [ ] **Limited**<br>(Amount demanded exceeds $25,000) (Amount demanded is $25,000) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 21CV377848<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation**<br>**(Cal. Rules of Court, rules 3.400–3.403)** |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09)<br>[ ] Insurance coverage (18) | [ ] Mass tort (40)<br>[ ] Securities litigation (28) |
| [ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | [ ] Other contract (37)<br>**Real Property**<br>[ ] Eminent domain/Inverse condemnation (14)<br>[ ] Wrongful eviction (33) | [ ] Environmental/Toxic tort (30)<br>[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>**Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13)<br>[ ] Fraud (16) | **Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32)<br>[ ] Drugs (38) | **Miscellaneous Civil Complaint**<br>[ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition** |
| [ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35) | **Judicial Review**<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11) | [ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| **Employment**<br>[ ] Wrongful termination (36)<br>[x] Other employment (15) | [ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | |

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: February 16, 2021

Steven M. Tindall

(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

**Superior Court of California, County of Santa Clara**
**191 North First St., San José, CA 95113**

CASE NUMBER: 21CV377848

## PLEASE READ THIS ENTIRE FORM

_**PLAINTIFF**_ (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the _Complaint_, _Summons_, an _Alternative Dispute Resolution (ADR) Information Sheet_, and a copy of this _Civil Lawsuit Notice_, and you must file written proof of such service.

---

_**DEFENDANT**_ (The person sued): **You must do each of the following to protect your rights:**

1. You must file a **written response** to the _Complaint, using the proper legal form or format,_ in the Clerk's Office of the Court, within **30 days** of the date you were served with the _Summons_ and _Complaint;_
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

   **Warning: If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

_**RULES AND FORMS:**_   You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

_**CASE MANAGEMENT CONFERENCE (CMC):**_   You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC.  You must also fill out, file and serve a _Case Management Statement_ (Judicial Council form CM-110) at least 15 calendar days before the CMC.

   _**You or your attorney must appear at the CMC.**_  You may ask to appear by telephone – see Local Civil Rule 8.

| | |
|---|---|
| Your Case Management Judge is: Kirwan, Peter | Department: 19 |
| The 1st CMC is scheduled for: (Completed by Clerk of Court) | |
| Date: 6/29/2021   Time: 3:45 PM | in Department: 19 |
| The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed) | |
| Date: _____   Time: _____ | in Department: _____ |

_**ALTERNATIVE DISPUTE RESOLUTION (ADR):**_  If all parties have appeared and filed a completed _ADR Stipulation Form_ (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

_**WARNING:**_ Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SANTA CLARA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### What is ADR?
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### What are the advantages of choosing ADR instead of litigation?
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### What are the main forms of ADR offered by the Court?
**Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation**, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET
CIVIL DIVISION**

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:

- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:

- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would be helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*
Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*
Santa Clara County Superior Court
ADR Administrator
408-882-2530

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET**
**CIVIL DIVISION**

E-FILED
2/16/2021 4:35 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
21CV377848
Reviewed By: R. Tien

Steven M. Tindall (SBN 187862)
Jeffrey Kosbie (SBN 305424)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone:  (510) 350-9700
Fax:  (510) 350-9701
smt@classlawgroup.com
jbk@classlawgroup.com

*Attorneys for Plaintiff John Doe*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA, UNLIMITED JURISDICTION

| | |
|---|---|
| JOHN DOE, | Case No. [ 21CV377848        ], |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF** |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, a Ohio Corporation; and DOES 1-50. | **JURY TRIAL DEMANDED** |
| Defendants. | |

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff John Doe, an individual, alleges:

## **INTRODUCTION**

1.     Plaintiff John Doe ("Plaintiff") brings this action against Defendant Progressive Corporation ("Defendant") for discrimination based on gender identity, gender expression, sex stereotyping, and transgender status; harassment based on gender identity, gender expression, sex stereotyping, and transgender status; retaliation; and discrimination based on disability. Plaintiff is a long-time employee of Defendant. Prior to announcing that he identified as a transgender man, Plaintiff received positive work reviews and was asked to help train other employees. Since announcing his planned transition, Plaintiff has been subjected to severe and pervasive harassment and discrimination by several supervisors. In particular, Plaintiff's supervisors have disclosed his transition—which constitutes private medical information—to Plaintiff's co-workers without Plaintiff's consent. In addition, since filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff has been subjected to retaliation. Defendant failed to adequately investigate the complaints that Plaintiff did make, and failed to prevent the retaliation, harassment, and discrimination aimed at Plaintiff.

## **JURISDICTION AND VENUE**

2.     This Court has jurisdiction over Defendant because they are doing business in the State of California and in Santa Clara County, and the claims asserted herein arose in Santa Clara County.

3.     Venue is proper in this court under Government Code § 12965(b) and Code of Civil Procedure § 395 because Plaintiff performed substantial work for Defendant in Santa Clara County, and the primary events giving rise to this action occurred in Santa Clara County. In addition, Defendant transacts business in this County and maintains a workplace in this County.

4.     The amount demanded and sought by Plaintiff exceeds the minimum jurisdiction of this Court and exceeds $25,000.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

**PARTIES**

2     5.     Plaintiff John Doe is a resident of the County of Merced.  Plaintiff was employed

3 by Defendant in Santa Clara County.

4     6.     Plaintiff has filed under the pseudonym "John Doe" due to the sensitive, highly

5 private, and personal nature of his allegations.  As alleged further below, Plaintiff has taken

6 steps to maintain the privacy and confidentiality of his medical history and his status as a

7 transgender man.  Disclosure of Plaintiff's identity would further amplify the harms alleged in

8 this complaint, including substantial risk of further psychological harm.  Plaintiff does not

9 wish to be outed as transgender in a public filing and wishes to maintain the limited privacy of

10 continuing to choose to whom and when to reveal his transgender status, as this is a highly

11 personal and sensitive issue and necessarily discloses private medical information about

12 Plaintiff.

13     7.     Defendant Progressive Casualty Insurance Company ("Progressive") at all times

14 relevant herein was a corporation organized under the laws of the State of Ohio, with its

15 Principal Executive Offices located at 6300 Wilson Mills Road, Mayfield Village, Ohio.

16 Defendant is registered to do business in California and has offices in Santa Clara County.

17     8.     Plaintiff is ignorant of the true names and capacities of the defendants sued as

18 "Does 1 through 50" and therefore sues these defendants by fictitious names.  Plaintiff will

19 amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is

20 informed and believes, and on that basis alleges, that each of the fictitiously named

21 defendants is responsible in some manner for the occurrences and damages alleged herein.

22     9.     Plaintiff is informed and believes and on that basis alleges that, at all relevant

23 times, each of Defendants, whether named or fictitious, was the agent or employee of each of

24 the other Defendants, and in doing the things alleged to have been done herein, acted within

25 the scope of such agency or employment and with the permission and consent of said co-

26 Defendants.

27 / / /

28 / . / /

## FACTUAL ALLEGATIONS

10.     Plaintiff has spent his career working in the insurance claim industry, including working for AAA, Nationwide Mutual Insurance, and working for his own company.  Plaintiff has worked for Progressive since June 2014.  Plaintiff worked as a Managed Repair Representative from June 2014 through 2016 and again from June 2018 until the present.  Between June 2016 and June 2018, Plaintiff worked as a Fire and Theft Investigator.

11.     Plaintiff's performance reviews during his first four years at Progressive were "Meets Expectations," and he was complimented on his efficiency and ability to work with others.  Plaintiff never received a 30-day disciplinary notice during this period.

12.     In addition, Plaintiff has numerous certifications related to work in the insurance industry, including a Platinum Certificate of Recognition from I-Car Professional Development Program and a Master Structural Damage Analysis Professional Certification from Chief Automotive Technologies, Inc., Training Division.  Several of Plaintiff's co-workers lacked these certifications.

13.     On more than one occasion prior to 2018, Progressive asked Plaintiff to train new Managed Repair Representatives.  This included, for example, on at least two occasions asking Plaintiff to ride along with new Managed Repair Representative trainees to observe their customer interactions.

14.     This all changed after Plaintiff announced that he identified as a transgender man and would begin the process of transitioning his gender expression.  The regulations implementing FEHA define transitioning as "a process some transgender people go through to begin living as the gender with which they identify."  2 CCR § 11030(f).  The regulations explain that transitioning includes social, medical, and legal aspects, and state that "[i]t is unlawful to discriminate against an individual who is transitioning, has transitioned, or is perceived to be transitioning."  *Id.*; 2 CCR § 11034(i)(4).

15.     In May 2018, on the advice of his medical team, Plaintiff began attending support groups and individual therapy and began hormone therapy in relation to his Gender Dysphoria.  Gender Dysphoria is characterized by significant and persistent distress between

3

1   the individual's physical sex and their gender identity.  Gender dysphoria and its treatment

2   are discussed in many standard medical and psychiatric texts, including the Diagnostic and

3   Statistical Manual of Mental Disorders.[1]

4       16.     On or around May 17, 2018, Plaintiff informed his supervisor, Avery Catabaran,

5   of his intent to transition.  Mr. Catabaran said nothing besides "keep us posted."  Following

6   this interaction, however, Mr. Catabaran began questioning Plaintiff's ability to manage his

7   time on days when he had medical appointments.  Mr. Catabaran also questioned Plaintiff's

8   work from home arrangement which had been in place since 2017.

9       17.     Due to the discriminatory treatment he faced from Mr. Catabaran, in June 2018

10  Plaintiff requested a transfer back to his previous job as a Managed Repair Representative.

11  Unfortunately, this transfer did not allow Plaintiff to escape the harassment he suffered

12  because he was transitioning and/or on account of his gender identity and gender expression.

13  His new supervisor, TJ Hargrove, questioned Plaintiff's ability to complete his work while

14  undergoing medical transition procedures.  On multiple occasions, Mr. Hargrove texted

15  Plaintiff to question his whereabouts when Plaintiff was at the doctor.  Plaintiff's cisgender

16  colleagues were not subject to this questioning of their whereabouts during medical

17  appointments.  *Cisgender* is a term for people whose gender identity matches the sex that they

18  were assigned at birth (i.e., non-transgender).

19      18.     Mr. Hargrove also limited the terms and conditions of Plaintiff's job duties and

20  authority.  For example, Plaintiff was only given authority to authorize insurance claims up to

21  $2,500.  In contrast, when Plaintiff first started as a Managed Repair Representative in 2014,

22  he was given $10,000 authority.  Moreover, Plaintiff was only given one assignment per day,

23  rather than the 4-5 assignments per day that Plaintiff previously received, and that was typical

24  for employees at Plaintiff's level.  On several occasions, Plaintiff's co-workers asked Plaintiff

25  why he was assigned so few assignments per day.

26      19.     As a result of his treatment by Mr. Hargrove, Plaintiff began avoiding using the

27  restrooms at the Progressive office or used the restrooms upstairs on the second floor (where

28  ---
[1] http://transgenderlawcenter.org/wp-content/uploads/2014/01/Health-Insurance-Exclusions-Guide-2-WEB.pdf

4

COMPLAINT AND DEMAND FOR JURY TRIAL

1    Progressive did not have offices).  Plaintiff feared harassment if he was seen using the

2    restrooms on the first floor, where Progressive had its offices.

3          20.    On or around August 23, 2018—while Plaintiff was on bereavement leave

4    following the death of his grandmother—Mr. Hargrove called Plaintiff to tell him that he

5    needed to announce his transition to his co-workers.  Plaintiff was not ready to announce his

6    transition to his coworkers, but Mr. Hargrove gave Plaintiff little choice, instructing that he

7    had to announce his transition soon.

8          21.    In particular, Mr. Hargrove instructed Plaintiff that he could not use the men's

9    restroom until he announced his transition to his co-workers.  The office that Plaintiff worked

10   out of was located in an office building with restrooms shared by several companies.  Each

11   restroom had an access code on it, and Plaintiff was not given the men's restroom code prior

12   to announcing his transition to his co-workers.

13         22.    Under FEHA regulations, employers are required to allow employees to use

14   restrooms consistent with the gender identity, regardless of their sex assigned at birth.  2

15   CCR § 10034(e).  Employees shall not be required to undergo or provide proof of any medical

16   procedures prior to using restrooms consistent with their gender identity.  *Id*.  An employer is

17   allowed only a "reasonable and confidential inquiry" for purposes of ensuring compliance with

18   this regulation.  *Id*.  Here, Defendant's requirement that Plaintiff make a public statement to

19   his co-workers constituted discrimination and harassment on the basis of gender identity

20   and/or expression.

21         23.    Plaintiff announced his transition at a team meeting, which was unusual in itself

22   because his co-workers all worked in the field and typically did not see each other in the office.

23   This forced outing was one of the most uncomfortable moments of Plaintiff's life, and most of

24   his co-workers had looks of shock on their faces following Plaintiff's announcement.

25         24.    On or around August 29, 2018, Mr. Hargrove placed Plaintiff on a 30-day

26   disciplinary notice, allegedly because Plaintiff was behind on work progress.  When Plaintiff

27   discussed the 30-day notice with Mr. Hargrove, however, it became clear that computer

28   system errors over which Plaintiff had no control had caused Plaintiff to be listed as behind on

COMPLAINT AND DEMAND FOR JURY TRIAL

1   certain projects.  Nonetheless, Mr. Hargrove subjected Plaintiff's entire work product and

2   interactions with customers to an intensive review, which Plaintiff had never previously been

3   subject to.  For example, Mr. Hargrove began checking Plaintiff's emails prior to Plaintiff

4   sending them.  In addition, Mr. Hargrove began requiring Plaintiff to come back to the office

5   following a field inspection in order to complete his reports.

6          25.    Following the 30-day notice incident, Mr. Hargrove continued to single Plaintiff

7   out for questioning of his medical treatment.  On days when Plaintiff attended medical

8   appointments, Mr. Hargrove would question his work product.  Mr. Hargrove told Plaintiff

9   that he was concerned that Plaintiff's work was suffering due to transitioning, and Mr.

10  Hargrove questioned Plaintiff's ability to complete his work due to his medical treatment.

11         26.    The stress caused by Mr. Hargrove's ongoing harassment and discrimination, in

12  combination with Plaintiff's testosterone supplements, caused Plaintiff's blood sugar levels to

13  spike and resulted in his diabetes getting out of control.  As a result, in or around October

14  2018 Plaintiff had to postpone a planned transition surgery.

15         27.    After Plaintiff's doctors determined he was ready for surgery, in or around

16  January 2019, Plaintiff went on medical leave for a transition-related surgery.  Plaintiff

17  returned to work on or around March 18, 2019.

18         28.    When Plaintiff returned to work, there was an opening for a supervisor position,

19  which he applied for.  Shortly before the interview for the supervisor position, Plaintiff met

20  with Mr. Hargrove.  During their conversation, Plaintiff disclosed to Mr. Hargrove that he had

21  PTSD and asked what Progressive does if job candidates have a mental health disability.  Mr.

22  Hargrove said that they would not get hired because they could not complete the job.

23         29.    On the day of the interview, Plaintiff dressed in traditionally masculine

24  professional attire, including a tie, dress pants, and dress shirt.  Mr. Castagnetto, who was

25  interviewing Plaintiff and had previously told Plaintiff not to submit a request for the

26  supervisor position, appeared very uncomfortable.  Despite his long history in the industry,

27  and his previous work experience at Progressive, Plaintiff was barely questioned during the

28  interview and was not taken seriously as a candidate for the job.  Plaintiff believes that Mr.

COMPLAINT AND DEMAND FOR JURY TRIAL

1  Hargrove and Mr. Castagnetto intended to undermine Plaintiff's application for the supervisor
2  position.

3      30.    In contrast, many Managed Repair Representatives were promoted within two
4  to three years.  Plaintiff had the experience required of managers at Progressive, including
5  managing network facilities, property damage arbitration files, and designating to Fire & Theft
6  damage inspection, complex mechanical, steering, and suspension cases.  In addition, as
7  previously discussed, Plaintiff had certifications related to his proficiency in handling auto
8  insurance claims.  As compared to his cisgender peers who were promoted despite having less
9  experience than Plaintiff, Plaintiff thus experienced discrimination.

10      31.    In July 2019, at Plaintiff's request, Progressive agreed to transfer Plaintiff from
11  Santa Clara, California, to Modesto, California.  Plaintiff believed his transfer would allow him
12  to start over with colleagues who were unaware of his transition or his status as a transgender
13  person.  And, indeed, for the first two months in the Modesto office working under supervisor
14  Brian Sonke, Plaintiff had a positive experience, while his supervisor and colleagues were
15  unaware of his private medical history and status as a trans man.

16      32.    This bliss, however, was short-lived.  By mid-August, Mr. Sonke learned of
17  Plaintiff's transition.  This became apparent to Plaintiff during a team meeting over the phone.
18  During the team meeting, Mr. Sonke misgendered Plaintiff without correcting himself.
19  *Misgendering* is the act of referring to someone using language that inaccurately represents
20  their gender, including especially pronouns or other forms of address.  Under the regulations
21  implementing the FEHA, misgendering is an act of discrimination.  2 CCR § 11034(h)(3) ("If
22  an employee requests to be identified with a preferred gender, name, and/or pronoun . . . an
23  employer or other covered entity who fails to abide by the employee's stated preference may
24  be liable under the Act . . . .").

25      33.    Shortly thereafter, in September 2019, Plaintiff was informed by Progressive
26  that he would be transferred back to Santa Clara County, to the Gilroy office, where he would
27  work under Rhonda Guerrera.  In contrast to his cisgender peers, who were provided transfers
28  when they requested them and then allowed to remain at their new location, Plaintiff did not

COMPLAINT AND DEMAND FOR JURY TRIAL

1 | request the transfer to Gilroy and had previously specifically requested not to be transferred to
2 | Ms. Guerrera's supervision.

3 |     34.    Prior to Plaintiff's first day at the Gilroy office, Ms. Guerrera told Plaintiff's new
4 | team about Plaintiff's transition without his consent. This constituted a disclosure of
5 | Plaintiff's private medical history without his consent, and in direct contradiction to the
6 | reason that Plaintiff requested a transfer—to be able to work with colleagues who were
7 | unaware of his transition.

8 |     35.    Ms. Guerrera subjected Plaintiff to intense scrutiny, especially with regard to his
9 | medical care. For example, on days when Plaintiff took a partial day off for medical
10 | appointments, Ms. Guerrera would review his entire case load for the day. In addition, Ms.
11 | Guerrera would question the need and purpose of various medical appointments. Plaintiff's
12 | cisgender colleagues were not subjected to this investigation and intimidation regarding their
13 | medical care.

14 |     36.    On at least two occasions while talking on the phone with Plaintiff, Ms. Guerrera
15 | misgendered Plaintiff without correcting herself. In addition, Plaintiff's co-workers reported
16 | to Plaintiff that on multiple occasions, Ms. Guerrera misgendered Plaintiff in front of
17 | Plaintiff's co-workers without correcting herself.

18 |     37.    On or around September 30, 2019, Plaintiff submitted a make-up time request
19 | for time off for transition surgery. Progressive has a make-up time policy that allows
20 | employees to request alternate work hours when they have medical appointments, rather than
21 | using their personal time off.

22 |     38.    Ms. Guerrera confronted Plaintiff—in front of two other co-workers—regarding
23 | the make-up time request. Ms. Guerrera demanded that Plaintiff request personal time off,
24 | rather than make-up time. Plaintiff felt humiliated having his medical time-off requests
25 | scrutinized, especially so because it was done in front of co-workers who could hear the
26 | discussion of Plaintiff's time off request. Plaintiff's cisgender colleagues were not subjected to
27 | this scrutiny of their make-up time requests.

28 |

COMPLAINT AND DEMAND FOR JURY TRIAL

39.     The following day, on October 1, Plaintiff woke up feeling anxious and mentally and emotionally drained.  Plaintiff had physical chest pains that morning and had to calm himself down before he felt prepared to go to work.  Plaintiff attempted to limit his communication with Ms. Guerrera during the day in order to avoid further triggering his symptoms.

40.     On October 2, 2019, Plaintiff filed a written complaint with Human Resources against Ms. Guerrera for gender discrimination resulting in a hostile work environment. Plaintiff's complaint was forwarded to Mr. Castagnetto, Ms. Guerrera's supervisor.

41.     On or around October 9, 2019, Plaintiff informed Defendant that he intended to file an EEOC charge for harassment and discrimination.  The next day, Plaintiff submitted an inquiry to the EEOC via the EEOC online portal.  Plaintiff's intake interview with the EEOC was scheduled on or around March 10, 2020.

42.     Plaintiff scheduled a meeting with Mr. Castagnetto for October 21, 2019, regarding his complaint against Ms. Guerrera.  However, when Plaintiff arrived at Mr. Castagnetto's office, Mr. Castagnetto informed him that the meeting was cancelled.  Mr. Castagnetto refused to discuss Plaintiff's complaint.  Instead, Mr. Castagnetto told Plaintiff that he could not believe that Plaintiff would make complaints about Ms. Guerrera and "drag everyone into this."

43.     On October 30, 2019, Plaintiff met with Mr. Castagnetto and Ms. Guerrera for a "coaching and feedback" meeting.  During this meeting, Mr. Castagnetto told Plaintiff "this could have been handled differently" in apparent reference to Plaintiff's complaint against Ms. Guerrera.  In addition, during the meeting, Plaintiff was questioned regarding files he had reviewed and completed, including his decisions on things like replacement suspension components or windshield recalibration.  One file that Mr. Castagnetto brought up for failing to meet expectations had already been approved.  Plaintiff's cisgender co-workers were not subject to this unwarranted scrutiny.

44.     Plaintiff's job required him to drive to different locations in order to inspect vehicles and complete vehicle damage estimates.  On multiple occasions, despite previous

COMPLAINT AND DEMAND FOR JURY TRIAL

1    knowledge of his scheduled medical appointments, Ms. Guerrera scheduled Plaintiff's

2    inspections so as to require Plaintiff to travel long distances between his inspections and

3    medical appointments. This scheduling interfered with Plaintiff's ability to minimize how

4    much time he needed to take off for medical appointments.

5        45.    On multiple occasions, Ms. Guerrera also questioned or denied Plaintiff's make-

6    up time requests for his medical appointments. For example, on or around December 2, 2019,

7    Plaintiff put in a request for personal time off on December 5, in order to meet with his

8    surgery team in San Francisco in preparation for his upcoming surgery. In response to

9    Plaintiff's time-off request, on or about December 4, 2019, Ms. Guerrera asked Plaintiff if he

10    could reschedule his medical appointments. This ongoing scrutiny interfered with Plaintiff's

11    ability to get needed medical care and sustained a hostile work environment. Plaintiff's

12    cisgender colleagues were not subject to this refusal to accommodate their medical

13    appointments.

14        46.    On January 14, 2020, Plaintiff went on medical leave due to the ongoing

15    psychological and physical distress created by the hostile work environment he endured.

16    Plaintiff's blood pressure was elevated, and he suffered from depression and anxiety. In

17    addition, he began disassociating in response to the trauma created by his treatment.

18        47.    As a result of these symptoms, Plaintiff had to postpone a planned transition-

19    related surgery. Plaintiff's medical team continues to be unsure as to when he will be able to

20    reschedule his planned transition-related surgery. In addition, Plaintiff had to postpone a

21    long-planned adoption, and at this point, Plaintiff is unsure as to whether he will ever be able

22    to fulfill this goal due to the medical and psychological stress he has been under due to his

23    treatment at work.

24        48.    On or around January 21, 2020, while on medical leave, Plaintiff made an

25    anonymous complaint to Progressive's Human Resources hotline, alleging harassment and

26    retaliation by Ms. Guerrera and Mr. Castagnetto. Although Plaintiff's complaint was

27    anonymous, on information and belief, Progressive identified Plaintiff as the caller based on

28    the content of the allegations.

49.   Plaintiff returned from medical leave on or about April 6, 2020.  At that time, he continued to face heavy scrutiny from his supervisors.

50.   On or around April 17, 2020, Plaintiff filed another internal complaint with Progressive, alleging retaliation, harassment, and a hostile work environment.

51.   As part of his transition process, Plaintiff changed the spelling of his name. Despite this change, Progressive has not changed Plaintiff's email address to reflect his new name.  In addition, Progressive has not updated Plaintiff's name in other places in their computer system.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

52.   Plaintiff has exhausted all administrative remedies.

53.   Plaintiff filed an administrative charge with the EEOC on March 10, 2020.  The charge was cross-filed with the California Department of Fair Employment and Housing ("DFEH").  Plaintiff received a right-to-sue notice from DFEH on March 10, 2020.  This notice was tolled pending the EEOC investigation, which continued.  *See* Cal. Gov. Code § 12965(d).

54.   Plaintiff and Defendant agreed to meet for an EEOC mediation on May 21, 2020. Following the mediation, which did not resolve Plaintiff's charge, the EEOC conducted its investigation.  The EEOC issued a right-to-sue notice on November 18, 2020.

## FIRST CAUSE OF ACTION

### Harassment on the Basis of Gender Identity and/or Gender Expression in Violation of California Government Code § 12940(j)

55.   Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

56.   At all relevant times, Defendant was an employer subject to the Fair Employment and Housing Act.  Cal. Gov't Code § 12940, *et seq.*  At all relevant times, Plaintiff was employed by Defendant.

57.   An employer is strictly liable for the harassment by its supervisors or agents. *See Carrisales v. Dep't of Corr.* (1999) 21 Cal.4th 1132, 1136 (superseded by statute on other grounds); *Kelly Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 415 ("[H]arassment by a

11

COMPLAINT AND DEMAND FOR JURY TRIAL

1   supervisor is unlawful regardless of whether the employer knows or should have known and

2   fails to intervene.").

3       58.    Plaintiff was subjected to unwanted harassing conduct because of his gender

4   identity and/or gender expression.  The harassment was both severe and pervasive, and

5   included but was not limited to the forced outing of Plaintiff to his colleagues and disclosure of

6   medical information, reductions in Plaintiff's job authority and work assignments, repeated

7   misgendering of Plaintiff, repeated questioning of his medical care, and repeated scrutiny of

8   his work product.  A reasonable person in Plaintiff's circumstances would have considered the

9   work environment hostile or abusive, and Plaintiff considered the work environment hostile

10   and abusive.

11       59.    Plaintiff's supervisors, including Ms. Guerrera, Mr. Castagnetto, Mr. Hargrove,

12   and Mr. Catabaran engaged in the harassing conduct.  Plaintiff made numerous complaints to

13   Defendant regarding the harassment, and Defendant took no corrective action, ratifying the

14   conduct.  Defendant knew or should have known of the harassing conduct and failed to take

15   immediate and appropriate corrective action.

16       60.    Plaintiff was harmed by Defendant's harassing conduct.  As a direct and

17   proximate result of these unlawful acts, Plaintiff has suffered and continues to suffer economic

18   damages in a sum according to proof.   These damages include lost wages, employment

19   benefits, and other compensation.  As a further result of Defendant's actions, Plaintiff has

20   suffered emotional distress, including feelings of depression, humiliation, embarrassment,

21   anxiety, nervousness, and other symptoms of stress, resulting in damages to be proven at trial.

22       61.    The conduct of Defendant alleged herein was malicious and oppressive, and

23   done with the wrongful intent of injuring Plaintiff in conscious disregard of Plaintiff's rights.

24       62.    Because Defendant's conduct alleged herein was willful, knowing, and

25   intentional, Plaintiff is entitled to recover punitive damages in an amount according to proof.

26       63.    Plaintiff is entitled to compensatory damages, declaratory and injunctive relief,

27   punitive damages, attorneys' fees and costs, interest, penalties, and other appropriate relief as

28   determined by this court.

**SECOND CAUSE OF ACTION**

**Discrimination on the Basis of Gender Identity and/or Gender Expression in Violation of California Government Code § 12940(a)**

64.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

65.    At all relevant times, Defendant was an employer subject to the Fair Employment and Housing Act. Cal. Gov't Code § 12940, *et seq.* At all relevant times, Plaintiff was employed by Defendant.

66.    Defendant engaged in multiple adverse actions against Plaintiff due to Plaintiff's gender identity and/or gender expression, including but not limited to reducing Plaintiff's authority to authorize insurance claims, reducing Plaintiff's work assignments, and refusing to promote Plaintiff.

67.    It is unlawful under the FEHA for an employer to discriminate against an employee in terms, conditions, or privileges of employment based on the gender identity or gender expression of that person. Cal. Gov't Code § 12940(a); 2 CCR § 11030(a)-(c). Under the FEHA's implementing regulations, an employer unlawfully discriminates in the "Terms, Conditions, and Privileges of Employment" when it fails to abide by an employee's "preferred gender, name, and/or pronoun." 2 CCR § 11034(h)(3). Defendant's intentional and uncorrected misuse of Plaintiff's gender pronouns and failure to update Plaintiff's name in Defendant's email system and elsewhere in its computer system constituted unlawful discrimination.

68.    Defendant's adverse actions against Plaintiff were specifically motivated, at least in part, by Plaintiff's gender identity and/or gender expression.

69.    Plaintiff was harmed by Defendant's discriminatory conduct. As a direct and proximate result of these unlawful acts, Plaintiff has suffered and continues to suffer economic damages in a sum according to proof. These damages include lost wages, employment benefits, and other compensation. As a further result of Defendant's actions, Plaintiff has suffered emotional distress, including feelings of depression, humiliation, embarrassment,

13

COMPLAINT AND DEMAND FOR JURY TRIAL

1 | anxiety, nervousness, and other symptoms of stress, resulting in damages to be proven at trial.

2 | 70.     The conduct of Defendant alleged herein was malicious and oppressive, and

3 | done with the wrongful intent of injuring Plaintiff in conscious disregard of Plaintiff's rights.

4 | 71.     Because Defendant's conduct alleged herein was willful, knowing, and

5 | intentional, Plaintiff is entitled to recover punitive damages in an amount according to proof.

6 | 72.     Plaintiff is entitled to compensatory damages, declaratory and injunctive relief,

7 | punitive damages, attorneys' fees and costs, interest, penalties, and other appropriate relief as

8 | determined by this court.

9 | **THIRD CAUSE OF ACTION**

10 | **Retaliation in Violation of California Government Code § 12940, *et seq.***

11 | 73.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as

12 | though fully set forth herein.

13 | 74.     At all relevant times, Defendant was an employer subject to the Fair

14 | Employment and Housing Act. Cal. Gov't Code § 12940, *et seq.* At all relevant times, Plaintiff

15 | was employed by Defendant.

16 | 75.     Plaintiff engaged in protected activity on multiple occasions, including, but not

17 | limited to repeatedly reporting harassment and discrimination based on gender identity

18 | and/or gender expression and filing charges with the EEOC.

19 | 76.     Defendant subjected Plaintiff to adverse employment actions, including but not

20 | limited to harassing Plaintiff and tolerating and ratifying the harassment of Plaintiff, reducing

21 | Plaintiff's work assignments, and refusing to promote Plaintiff.

22 | 77.     Plaintiff's exercise of protected activity was a substantial motivating reason for

23 | Defendant's decision to take adverse actions, including, but not limited to, refusing to

24 | promote Plaintiff.

25 | 78.     Plaintiff was harmed by Defendant's conduct. As a direct and proximate result

26 | of these unlawful acts, Plaintiff has suffered and continues to suffer economic damages in a

27 | sum according to proof. These damages include lost wages, employment benefits, and other

28 | compensation. As a further result of Defendant's actions, Plaintiff has suffered emotional

1    distress, including feelings of depression, humiliation, embarrassment, anxiety, nervousness,

2    and other symptoms of stress, resulting in damages to be proven at trial.

3        79.    The conduct of Defendant alleged herein was malicious and oppressive, and

4    done with the wrongful intent of injuring Plaintiff in conscious disregard of Plaintiff's rights.

5        80.    Because Defendant's conduct alleged herein was willful, knowing, and

6    intentional, Plaintiff is entitled to recover punitive damages in an amount according to proof.

7        81.    Plaintiff is entitled to compensatory damages, declaratory and injunctive relief,

8    punitive damages, attorneys' fees and costs, interest, penalties, and other appropriate relief as

9    determined by this court.

10    **PRAYER FOR RELIEF**

11    WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

12        82.    Enter a declaratory judgment that the practices complained of in this complaint

13    are unlawful and violate the FEHA;

14        83.    Enter an injunction for any and all appropriate relief, including but not limited

15    to, instituting policies, procedures, and training to ensure compliance with the FEHA;

16        84.    Order Defendant to pay past and future wages, salary, employment benefits,

17    penalties, and other compensation denied or lost to Plaintiff by reason of Defendant's

18    unlawful acts, in an amount to be proven at trial;

19        85.    Order Defendant to pay compensatory damages for Plaintiff's emotional pain

20    and suffering, in an amount to be proven at trial;

21        86.    Award exemplary and punitive damages;

22        87.    Award Plaintiff attorneys' fees and costs of the action;

23        88.    Order Defendants to pay interest at the legal rate on such damages as

24    appropriate, including pre- and post-judgment interest; and

25        89.    Grant any further relief that the Court deems just and proper.

26

27    / / /

28    / / /

15

COMPLAINT AND DEMAND FOR JURY TRIAL

1    DATED: February 16, 2021          Respectfully submitted,

2                                      **GIBBS LAW GROUP LLP**

3

4                                      By:   _____

5

6                                      Steven M. Tindall
                                       Jeffrey Kosbie
7                                      505 14th Street, Suite 1110
                                       Oakland, California 94612
8                                      Telephone:   (510) 350-9700
                                       Fax: (510) 350-9701
9                                      smt@classlawgroup.com
                                       jbk@classlawgroup.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL