Robert J. Wilger, Bar No. 168402
rwilger@littler.com
LITTLER MENDELSON P.C.
50 W. San Fernando, 7th Floor
San Jose, California 95113
Telephone:    408.998.4150
Fax No.:       408.288.5686

Joy Rosenquist, Bar No. 214926
jrosenquist@littler.com
Alan Rivera, Bar No. 329147
alrivera@littler.com
LITTLER MENDELSON P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
Telephone:    916.830.7200
Fax No.:       916.561.0828

Attorneys for Defendant
PROGRESSIVE CASUALTY INSURANCE
COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>  v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY, a Ohio Corporation; and DOES 1-50,<br><br>    Defendant. | Case No. 5:21-cv-02602-BLF<br><br>*Assigned to Magistrate Judge Nathanael M. Cousins*<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; [PROPOSED] ORDER**<br><br>Date:  August 23, 2023<br>Time:  1:00 pm<br>Location: Courtroom 5, 4th Floor<br><br>Complaint filed: February 16, 2021<br>Trial Date:  January 22, 2024 |

**TO PLAINTIFF JOHN DOE AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 23, 2023 at 1:00 p.m. in Courtroom 5, on the 4th Floor of this Court, located at Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, California, Defendant PROGRESSIVE CASUALTY INSURANCE COMPANY ("Defendant") will move, and hereby does move, for summary judgment or, alternatively, partial summary judgment on Plaintiff John Doe's Complaint for Damages.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant seeks summary judgment on each and every claim contained in Plaintiff's Complaint for Damages and requests that judgment be accordingly entered in its favor.  This motion is made upon the grounds that there are no disputed issues of material fact, and that each cause of action fails as a matter of law, and that Defendant is entitled to judgment.  In the alternative, Defendant seeks partial summary judgment on those causes of action or issues that this Court finds cannot be established or fail as a matter of law.

Defendant's motion is based upon this Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; the Memorandum of Points and Authorities, the Declarations of Alan M. Rivera and Jessette Porter, with attached exhibits, the papers and pleadings on file in this action, and on such other evidence as may be presented at the time of the hearing.

Dated: June 12, 2023

/s/ Alan Rivera

Robert J. Wilger
Joy C. Rosenquist
Alan Rivera
LITTLER MENDELSON P.C.
Attorneys for Defendant
PROGRESSIVE CASUALTY INSURANCE
COMPANY

**TABLE OF CONTENTS**

**PAGE**

I.  INTRODUCTION ............................................................................................................... 8

II. STATEMENT OF MATERIAL FACTS........................................................................... 8

    A.  Plaintiff's Employment With Progressive. ........................................................... 8

    B.  Plaintiff's Return to the MRR Role and Voluntary Gender Transition Announcement. .................................................................................................... 9

    C.  Plaintiff's Repair Authority Levels..................................................................... 11

    D.  Plaintiff's Performance Issues in the Summer of 2018. ..................................... 12

    E.  Plaintiff is Turned Down for a Supervisor Position in Spring of 2019 to a Candidate He Deems "Absolutely" Qualified. ................................................... 13

    F.  Plaintiff's Restroom is the Same Before and After Announcing His Transition....... 13

    G.  Plaintiff's Transfer Requests in Summer of 2019 and Subsequent Claims of People Using the Wrong Pronouns................................................................... 13

    H.  Plaintiff's Time Off and Make-Up Time Requests for Medical Appointments. ....... 15

    I.  Plaintiff's First Discrimination and Harassment Complaint on October 2, 2019....................................................................................................... 15

    J.  Plaintiff's Second Complaint of Discrimination, Harassment and Retaliation on January 21, 2020. ........................................................................................ 16

    K.  Plaintiff's Third Complaint of Discrimination, Harassment and Retaliation on April 17, 2020. ................................................................................................ 17

    L.  Plaintiff's Leaves of Absence, Resignation, and New Employment. ................... 19

III. LEGAL ARGUMENT........................................................................................................ 19

    A.  Progressive Has Met Its Burden For Summary Judgement In This Case.................. 19

    B.  Plaintiff Cannot Establish His First Cause Of Action For Gender Identity And/Or Gender Expression Harassment Because He Has Failed To Establish That He Was Subjected To Any Severe Or Pervasive Conduct. .............................. 20

        1.  Plaintiff Cannot Establish That He Was Treated Differently Because of His Gender Identity And/Or Gender Expression........................................ 22

        2.  Plaintiff Cannot Establish That The Alleged Harassment Was So Severe Or Pervasive That It Created A Hostile Work Environment. ........... 22

            a.  Plaintiff Was Not Subjected To Conduct Severe Enough To Be Unlawful Gender Identity And/Or Gender Expression Harassment As A Matter of Law. ...................................................... 22

            b.  Plaintiff Was Not Subjected To Conduct Pervasive Enough To Be Unlawful Gender Identity And/Or Gender Expression Harassment As A Matter of Law. ...................................................... 24

    C.  Plaintiff's Gender Identity And/Or Gender Expression Discrimination Claim Fails Because Plaintiff Was Not Subjected To An Adverse Employment Action Due To His Gender Identity And/Or Gender Expression. ............................. 25

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA  95814
916.830.7200

3.                          CASE NO. 5:21-CV-02602

# TABLE OF CONTENTS
(CONTINUED)

PAGE

1. Plaintiff's Reduction In Authority Level and Work Assignments Cannot Satisfy His Burden To Set Forth An Adverse Employment Action To Establish His Discrimination Claim. ............................ 26

2. Plaintiff Was Not Denied A Promotion Due To His Gender Identity And/Or Gender Expression. .......................................................... 27

3. Progressive Has Met Its Burden Of Demonstrating A Legitimate, Non-Discriminatory Reason For Plaintiff's Reduction in Authority Level And Work Assignments And Plaintiff's Promotion Denial And Plaintiff Cannot Establish That His Termination Was Pretextual So As To Establish His Discrimination Claims ....................................... 28

D. Plaintiff's FEHA Retaliation Claims Fail Because Plaintiff Was Not Subjected To An Adverse Employment Action Due To His Protected Activities. ................. 29

1. On A Pure Temporal Basis, Plaintiff Not Being Selected For The Supervisor Role Cannot Satisfy Plaintiff's Burden To Set Forth An Adverse Employment Action Connected To His Protected Conduct To Establish His Retaliation Claim. ....................................... 29

2. Alternatively, Progressive Had A Legitimate Non-Retaliatory Reason For Not Promoting Plaintiff So That Plaintiff Cannot Establish His Retaliation Claim. ....................................................... 30

IV. CONCLUSION ............................................................................ 30

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA 95814
916.830.7200

4.

CASE NO. 5:21-CV-02602

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akers v. County of San Diego,*
95 Cal.App.4th 1441 (2002) ...................................................................23

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)...................................................................................19

*Beyda v. City of Los Angeles,*
65 Cal.App.4th 511 (1998) .......................................................................20

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)...................................................................................19

*Coghlan v. American Seafoods Co. LLC,*
413 F.3d 1090 (9th Cir. 2005) ...........................................................25, 28

*Fisher v. San Pedro Peninsula Hospital,*
214 Cal.App.3d 590 (1989) ......................................................................20

*Fuentes v. AutoZone, Inc.,*
200 Cal.App.4th 1221 (2011) ...................................................................21

*Gathenji v. Autozoners, LLC,*
703 F.Supp.2d 1017 (E.D. Cal. 2010).......................................................22

*Guz v. Bechtel Nat'l, Inc.,*
72 Cal.4th 317 (2000) ........................................................24, 25, 28, 29

*Heard v. Lockheed Missiles & Space Co.,*
44 Cal.App.4th 1735 (1996) .....................................................................25

*Holmes v. Petrovich Dev. Co., LLC,*
191 Cal.App.4th 1047 (2011) .............................................................26, 27

*Hughes v. Pair,*
46 Cal.4th 1035 (2009) .............................................................................24

*Janken v. GM Hughes Elec.,*
46 Cal.App.4th 55 (1996) .........................................................................23

*Lyle v. Warner Brothers Television Productions,*
38 Cal.4th 264 (2006) .........................................................................21, 24

*Matvia v. Bald Head Island Mgmt., Inc.,*
259 F.2d 261 (4th Cir. 2001) ....................................................................22

*McCaskey v. California State Automobile Assn.*,
    189 Cal.App.4th 947 (2010) ....................................................................25

*McDonnell-Douglas Corp. v. Green*,
    411 U.S. 792 (1973)...........................................................................24, 29

*Mokler v. County of Orange*,
    157 Cal.App.4th 121 (2007) ...........................................................24, 29

*Musick v. Burke*,
    913 F.2d 1390 (9th Cir. 1990) ..............................................................19

*Reeves v. Sanderson Plumbing Prods.*,
    530 U.S. 133 (2000)...........................................................................25, 28

*Reno v. Baird*,
    18 Cal.4th 640 (1998) ............................................................................23

*Rey v. C & H Sugar Co.*,
    609 Fed. Appx. 923 (9th Cir. 2015) .....................................................28

*Rivas Rosado v. Radio Shak, Inc.*,
    312 F.3d 532 (1st Cir. 2002) .................................................................22

*Roby v. McKesson Corp.*,
    47 Cal.4th 686 (2009) .....................................................................20, 23

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*,
    690 F.2d 1235 (9th Cir. 1980) ..............................................................20

*Sheffield v. Los Angeles County Dept. of Social Services*,
    109 Cal.App.4th 153 (2003) ..................................................................20

*Slatkin v. Univ. of Redlands*,
    88 Cal.App.4th 1147 (2001) ..................................................................28

*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 .........................................................................................25

*Strother v. Southern Cal. Permanente Med. Group*,
    79 F.3d 859 (9th Cir. 1996) ..................................................................26

*Thomas v. Department of Corrections*,
    77 Cal.App.4th 507 (2000) ...................................................................22

*TW Elec. Serv. v. Pacific Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) ................................................................20

*Van Asdale v. International Game Tech.*,
    577 F.3d 989 (9th Cir. 2009) ................................................................20

*Wilson v. Murillo*
    (2008) 163 Cal.App.4th 1124 ..............................................................................26

*Yanowitz v. L'Oreal USA, Inc.*,
    36 Cal.4th 1028 (2005) ........................................................................................26

**Statutes**

Cal. Gov. Code § 12940(h) ..........................................................................................29

California Fair Employment and Housing Act ...........................................................20

FEHA .................................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. Rule 50(a)............................................................................................19

Fed. R. Civ. P. 56(a) ....................................................................................................19

## I.      INTRODUCTION

Based on the undisputed facts filed in support of this motion, summary judgment should be granted in Defendant Progressive Casualty Insurance Company's favor for each of Plaintiff John Doe's claims. Plaintiff's Complaint sets forth three causes of action: (1) Harassment on the basis of Gender Identity and/or Gender Expression in Violation of FEHA; (2) Discrimination on the Basis of Gender Identity and/or Expression in Violation of FEHA; and (3) Retaliation in violation of FEHA. The undisputed facts of this case establish that Plaintiff was not subjected to unlawful gender identity and/or gender expression harassment. Further, Plaintiff was not treated differently due to his gender identity and/or gender expression. Finally, Plaintiff cannot establish he suffered an adverse action due to his gender identity, gender expression, or engaging in protected conduct because all of Plaintiff's complaints were thoroughly investigated and deemed unsubstantiated. Plaintiff's employment ended when he resigned after taking a voluntary leave of absence for medical reasons.

Plaintiff admits that his claims are based upon ordinary personnel management interactions with his managers, that he voluntarily disclosed his transition, that the person selected over him for a supervisor role was "absolutely" qualified, and a handful of misgendering instances by individuals who knew Plaintiff before his transition, and who quickly corrected themselves. In addition, the undisputed evidence will establish that all of Plaintiff's complaints were fully investigated and found to be unsubstantiated.  As such, Plaintiff cannot establish an essential element of any of his claims and/or Progressive has a complete defense to the claims. Accordingly, summary judgment in Progressive's favor should be granted or, in the alternative, partial summary judgment should be granted on those claims that the Court finds Plaintiff cannot establish.

## II.     STATEMENT OF MATERIAL FACTS

### A.      Plaintiff's Employment With Progressive.

Progressive is a large insurance company.  Plaintiff was initially hired by Progressive on June 30, 2014, as a Managed Repair Representative ("MRR") (Deposition of Plaintiff ("Plaintiff Depo."), 25:7-8.)  At that time, when he was hired, Plaintiff identified as female.  (Plaintiff Depo., 96:24-97:7.) As an MRR, Plaintiff was tasked with traveling to various locations to complete vehicle damage estimates (Plaintiff Depo., 26:24-27:12, 33:8-16.)  An MRR typically received their daily assignments

from Progressive's dispatch, along with some assignments picked by his or her supervisor. (Deposition of Rhonda Guerrera ("Guerrera Depo."), 33:18-34:4; Deposition of Michael Castagnetto ("Castagnetto Depo."), 31:21-32:12.)  Throughout Plaintiff's employment, he consistently received overall performance evaluations of "Meets Expectations" or "Successful." (Declaration of Jessette Porter ("Porter Decl."), ¶ 6, Exhibit A.)  Plaintiff worked as an MRR until June 2016, when he transferred into Progressive's Fire and Theft Division to work as an Investigator Representative. (Plaintiff Depo., 27:13-21, 79:16-23.)

**B.    Plaintiff's Return to the MRR Role and Voluntary Gender Transition Announcement.**

In May 2018, Plaintiff disclosed his gender transition to his supervisor at the time, Avery Catabran. (Plaintiff Depo., 54:13-22.) On July 1, 2018, Plaintiff transferred from Fire and Theft back to his original position as an MRR in Santa Clara. (Plaintiff Depo., 30:13-18, 34:5-10.)  In the Santa Clara office, Plaintiff was assigned to T.J. Hargrove's team.  (Plaintiff Depo., 70:14-20.)  Plaintiff never interacted with Mr. Hargrove while Plaintiff was working as an MRR from 2014 to 2016. *Id.* Mr. Hargrove was unaware of Plaintiff's gender transition when Plaintiff transferred to his group, until Plaintiff disclosed it to him. (Plaintiff Depo., 71:9-17.)

In July 2018, Plaintiff informed Mr. Hargrove about his gender transition. (Plaintiff Depo., 173:25-174:4.) On July 23, 2018, Plaintiff sent Mr. Hargrove an email telling Mr. Hargrove that he was going to submit his story about his gender transition as part of Progressive's National Coming Out Day ("NCOD") celebration. (Plaintiff Depo., 168:19-169:12, 172:1-173:1; Porter Decl., ¶ 7, Exhibit B.) Mr. Hargrove responded 5 minutes later, writing: "Awesome! If you get chosen, let me know. Good luck!" (Plaintiff Depo., 169:15-19; Porter Decl., ¶ 7, Exhibit B.) On August 1, Plaintiff sent Mr. Hargrove the story he submitted for Progressive's NCOD celebration. (Plaintiff Depo., 169:25-170:14; Porter Decl., ¶ 7, Exhibit B.) Mr. Hargrove responded 8 minutes later, asking Plaintiff if his story would be shared publicly if Plaintiff was selected. (Plaintiff Depo., 173:10-175:4; Porter Decl., ¶ 7, Exhibit B.) Mr. Hargrove suggested that if Plaintiff's story was going to be shared publicly across the company, he should consider speeding up his announcement to their group. *Id.* Plaintiff did not object to Mr. Hargrove's suggestion that they speed up Plaintiff's announcement to their group. *Id.*

1   On August 10, 2018, Mr. Hargrove met with Plaintiff to tell him that another employee,

2   Tommy Garvin, had noticed hints of Plaintiff's gender transition on Plaintiff's Facebook page.

3   (Plaintiff Depo., 175:22-176:25; Porter Decl., ¶ 8, Exhibit C.) Plaintiff had made posts to his Facebook

4   page regarding his gender transition, and Mr. Garvin was able to view Plaintiff's Facebook posts

5   because they were friends on Facebook. *Id.* Mr. Hargrove did not share any information he knew about

6   Plaintiff's transition and immediately told Plaintiff what happened so that he could decide how to

7   address the situation. (Plaintiff Depo., 177:7-15; Porter Decl., ¶ 8, Exhibit C.) Plaintiff and Mr.

8   Hargrove also discussed how to handle the situation if more of Plaintiff's coworkers asked about

9   Plaintiff. (Porter Decl., ¶ 8, Exhibit C.) Plaintiff and Mr. Hargrove already had previous discussions

10  regarding Plaintiff formally disclosing his transition to his team, and Mr. Hargrove told Plaintiff that

11  they would proceed how Plaintiff wanted. (Plaintiff Depo., 93:5-10; Porter Decl., ¶ 8, Exhibit C.)

12  On August 17, 2018, Plaintiff and Mr. Hargrove discussed setting a timeline for Plaintiff to

13  formerly announce his transition and begin working as a male, since Plaintiff's planned October

14  transition date was approaching. (Declaration of Jessette Porter Vol. 1 ("Porter Depo. Vol. 1"), 94:14-

15  96:12; Porter Decl., ¶ 9, Exhibit D.) A meeting with Plaintiff's entire team was already scheduled for

16  August 23, 2018, and Plaintiff suggested that date to announce his transition. *Id.* Since the date was

17  less than a week away, Mr. Hargrove discussed the matter with Jessette Porter, a Human Resources

18  Consultant who Plaintiff was already working with regarding his transition at Progressive. (Plaintiff

19  Depo., 56:16-24; Porter Decl., ¶ 9, Exhibit D.) After the August 23, 2018 date was confirmed, Mr.

20  Hargrove and Ms. Porter consulted with Plaintiff to determine exactly who should know about

21  Plaintiff's transition and be present for the announcement. (Porter Depo. Vol. 1, 97:20-98:21.) All the

22  individuals that were present for Plaintiff's announcement were approved by Plaintiff prior to the

23  meeting. *Id.*

24  A few days before the August 23, 2018 meeting, Plaintiff's grandmother passed away. (Porter

25  Depo. Vol. 1, 98:24-99:24; Porter Decl., ¶ 10, Exhibit E.) Both Mr. Hargrove and Ms. Porter spoke

26  with Plaintiff and asked him whether he wanted to continue with his announcement as planned or

27  postpone the August 23, 2018 meeting. (Porter Depo. Vol. 1, 99:8-100:18.) Plaintiff told Ms. Porter

28  that he did not want to postpone the announcement, because his grandmother was one of his biggest

1   supporters and he wanted to continue with the announcement for his grandmother. *Id.* Plaintiff himself

2   admitted that throughout this process, Progressive and the managers he worked with followed the

3   internal guidelines Progressive used regarding transgender employees and that he was never forced to

4   do anything. (Plaintiff Depo., 168:8-14.)

5       On August 23, 2018, Plaintiff made his public announcement about his gender transition to the

6   Progressive team. (Plaintiff Depo., 92:4-20; Porter Depo. Vol. 1, 99:10-100:18.) Although some of

7   Plaintiff's coworkers were surprised by his announcement, other of Plaintiff's coworkers and

8   managers were "absolutely" supportive of Plaintiff. (Plaintiff Depo., 108:2-16; Porter Depo. Vol. 1.,

9   100:19-103:9.)  Plaintiff's managers were visibly emotional at the meeting and several of his

10  coworkers went up to Plaintiff to express their support. (Porter Depo. Vol. 1., 100:19-103:9.)

11      During this time, Plaintiff also recorded a video of himself at work in the Santa Clara office,

12  where he discussed gender transition. (Declaration of Alan M. Rivera ("Rivera Decl."), ¶ 8, Exhibit

13  F.) Plaintiff describes his story about his journey to find his identity and deciding to live openly. *Id.*

14  Plaintiff also states: "Progressive has taught me to be true to myself…" and that he is "proud to

15  represent the Santa Clara California office because of all their love and support here at the office…"

16  *Id.* Plaintiff then panned the camera to show the inside the office and all of Plaintiff's nearby coworkers

17  who can be seen and heard saying "we support you [Plaintiff]!" along with Plaintiff smiling and

18  laughing. *Id.*

19      **C.    Plaintiff's Repair Authority Levels.**

20      After Plaintiff transferred to Mr. Hargrove's group, Mr. Hargrove set Plaintiff's repair

21  authority level to $5,000, which was below the authority level Plaintiff had as an Investigator

22  Representative in the Fire and Theft Department.  (Plaintiff Depo., 78:12-19; Porter Decl., ¶ 11,

23  Exhibit F.)  An employee's authority level is a specific dollar amount threshold that the employee is

24  not to exceed in terms of payment for a vehicle appraisal. (Castagnetto Depo., 20:1-12.) Each role at

25  Progressive that has an authority level has a set maximum authority level for the specific role.

26  (Castagnetto Depo., 20:22-21:2.) Following Plaintiff's transfer back to the role of MRR and until his

27  resignation, the maximum authority level for an MRR was $10,000.  *Id.*  An MRR is not automatically

28  given the maximum limit; instead, an MRR's individual authority level is set by their local supervisor

NOTICE OF MOTION AND MPA IN
SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT/PARTIAL
SUMMARY JUDGMENT

11.

CASE NO. 5:21-CV-02602

who has the discretion to set the limit to any amount up to the MRR limit.  (Castagnetto Depo., 20:13-18.)

Plaintiff asked Mr. Hargrove why he set Plaintiff's authority limit below $10,000, and Mr. Hargrove explained to Plaintiff that he wanted to make sure Plaintiff's estimates were correct. (Plaintiff Depo., 78:12-19.)  An MRR's authority level is based on performance, specifically showing that their estimates are accurate and consistent with Progressive's policies.  (Castagnetto Depo., 23:15-24:2.)  Because Plaintiff had not worked as an MRR for more than two years and the processes had changed, Mr. Hargrove set Plaintiff's authority below the maximum until he became more familiar with Plaintiff's work.  (Plaintiff Depo., 82:7-11; Castagnetto Depo., 26:14-27:14.)

Plaintiff asked his coworkers who were also supervised by Mr. Hargrove what their authority levels were and discovered that not all of his coworkers were given the maximum authority level. (Plaintiff Depo., 82:12-83:9.)  Although Plaintiff's authority level was below his coworkers, he was the newest addition to Mr. Hargrove's team and all the coworkers he spoke with were already on the team when Plaintiff joined. (Plaintiff Depo., 83:10-84:3.)  A few months later and after Plaintiff's public announcement of his transition, Mr. Hargrove raised Plaintiff's authority level. (Plaintiff Depo., 84:4-17.)

**D.      Plaintiff's Performance Issues in the Summer of 2018.**

On August 29, 2018, Hargrove met with Plaintiff to discuss performance issues and coach Plaintiff on how to improve his performance moving forward. (Plaintiff Depo., 108:2-109:4.) While Plaintiff was out during bereavement leave, Mr. Hargrove became involved in many of Plaintiff's files, and noticed that there were several issues with Plaintiff falling behind in his work, starting before, and unrelated to, his bereavement leave.  (Porter Decl., ¶ 12, Exhibit G.)  The issues were serious enough that Mr. Hargrove coached Plaintiff on getting caught up on his work, but were not so serious as to warrant formal discipline. *Id.*

During this conversation, Mr. Hargrove explained Plaintiff needed to make some changes to his process because he was falling behind, and, to help Plaintiff catch up in his work, Plaintiff would only be given one assignment per day for two weeks. *Id.* Plaintiff still received his full pay during the time he had a reduced workload. (Plaintiff Depo., 103:9-11.)

1    On September 12, 2018, Hargrove and Plaintiff had another coaching conversation due to

2    Plaintiff receiving a complaint from a customer and to follow up on the issues with his handling of

3    assignments. (Porter Decl., ¶ 13, Exhibit H.) This was the second time a customer had complained

4    about Plaintiff's work, and Mr. Hargrove advised Plaintiff that receiving a third complaint is

5    unacceptable. *Id.*

6    **E.    Plaintiff is Turned Down for a Supervisor Position in Spring of 2019 to a
               Candidate He Deems "Absolutely" Qualified**

7        In March 2019, Plaintiff applied for an MRR supervisor position. (Plaintiff Depo., 35:20-22.)

8    Plaintiff was made aware of the position by Mr. Hargrove, who encouraged Plaintiff to apply. (Plaintiff

9    Depo., 36:17-37:25.) Plaintiff was selected to interview for the position, and was interviewed by four

10   managers: Mr. Hargrove, Ms. Porter, Michael Castagnetto, and Ian Sorokoski. (Plaintiff Depo., 39:4-

11   7; Porter Depo. Vol. 1, 84:21-85:3.)   Both Mr. Castagnetto and Ms. Porter believed that Plaintiff

12   performed poorly during his interview. (Castagnetto Depo., 43:15-20; Porter Depo. Vol. 1, 84:21-

13   86:5.) The MRR supervisor role was ultimately given to Plaintiff's peer, Audra Carrasco, who was as

14   qualified as Plaintiff for the role and performed better at the interview. (Plaintiff Depo., 42:17-25;

15   Castagnetto Depo., 39:12-40:4, 43:24-44:2.) Plaintiff himself admitted that Ms. Carrasco was

16   "absolutely" qualified for the role. (Plaintiff Depo., 42:23-25.)

17   **F.    Plaintiff's Restroom is the Same Before and After Announcing His Transition.**

18       Prior to publicly announcing his transition, Plaintiff was given access to both the male

19   and female restrooms.  (Plaintiff Depo., 97:20-98:11.)  It is undisputed that Plaintiff had access to both

20   restrooms before the August 23, 2018, meeting. (Plaintiff Depo., 86:22-87:19, 89:25-90:6, 98:20-24.)

21   Nothing changed in Plaintiff's access to both sex's bathrooms after announcing his transition.  *Id.*

22   **G.    Plaintiff's Transfer Requests in Summer of 2019 and Subsequent Claims of
               People Using the Wrong Pronouns.**

23

24       In July 2019, Plaintiff requested and was approved for a transfer to Progressive's Modesto

25   office. (Plaintiff Depo., 121:4-6.) At the Modesto office, Plaintiff's new supervisor was Brian Sonke.

26   (Plaintiff Depo., 125:17-20.) At the time of Plaintiff's transfer, Mr. Sonke was unaware that Plaintiff

27   was transitioning. (Plaintiff Depo., 125:21-126:7; Porter Depo. Vol. 1, 105:21-106:9.) It is unclear

28   whether Mr. Sonke ever learned of Plaintiff's transition. (Plaintiff Depo., 127:19-130:18; Porter

Depo., Vol. 1, 106:6-9.) However, during a call announcing that Plaintiff was going to transfer to the Gilroy office starting in September 2019, Plaintiff alleges he heard Mr. Sonke use the wrong gender pronoun, referring to him as "she." (Plaintiff Depo., 127:19-130:18.) This was the first and only instance that Plaintiff ever heard Mr. Sonke use an incorrect pronoun. *Id.* Plaintiff did not speak with Mr. Sonke afterwards to ask Mr. Sonke why he used the female pronoun or whether he was aware of Plaintiff's transition. *Id.*

The call with Mr. Sonke was not the first time Plaintiff claims his coworkers used the wrong pronoun. Plaintiff admits that his coworkers who were still adjusting to addressing Plaintiff by male pronouns following his public announcement and occasionally made mistakes. (Plaintiff Depo., 123:12-124:4.) Plaintiff understood that it would take time for his coworkers to adjust, and he believed they were respectful of him by making an effort to address Plaintiff by his preferred pronouns. (Plaintiff Depo., 122:22-124:4.)

In September 2019, Plaintiff was approved to transfer to the Gilroy office, which placed him under the supervision of Rhonda Guerrera. (Plaintiff Depo., 130:19-22.) Ms. Guerrera had previously worked with Plaintiff when he identified as female. (Guerrera Depo., 44:9-12.) Ms. Guerrera also knew about Plaintiff's affiliation as an ambassador with Progressive's LGBT Employee Resource Group ("ERG") and reached out to Plaintiff for materials to share with her group to raise awareness of ERGs for her own employees. (Guerrera Depo., 46:19-48:13.)

Prior to Plaintiff transferring to her group in September 2019, Ms. Guerrera was told about Plaintiff's transition. (Guerrera Depo., 49:2-19.) Ms. Guerrera was told about Plaintiff's transition after it became public following Plaintiff's public announcement in August 2018. (Guerrera Depo., 50:5-11.) There was only one instance Plaintiff could recall Ms. Guerrera using the wrong pronoun in Plaintiff's presence. (Plaintiff Depo., 146:13-21.) Ms. Guerrera inadvertently used the wrong pronoun due to fact that she knew Plaintiff and addressed Plaintiff as a female before his transition. (Plaintiff Depo., 146:5-21; Guerrera Depo., 76:23-77:3, 123:20-124:13.) However, Ms. Guerrera never intentionally used the wrong pronoun. (Guerrera Depo., 76:23-77:3, 123:20-124:13.) Ms. Guerrera did not openly discuss Plaintiff's transition with other employees, but in one conversation she did have with another employee, she corrected the employee's misgendering of Plaintiff, so as to

1  prevent further instances of employees using the incorrect pronoun. (Guerrera Depo., 79:7-80:2.)

2  **H.      Plaintiff's Time Off and Make-Up Time Requests for Medical Appointments.**

3  After announcing his transition, Plaintiff took time off to attend several medical appointments

4  related to his transition. (Plaintiff Depo., 71:24-72:5.) As part of Progressive's policies, Plaintiff was

5  allowed to request "make-up" time; make-up time allowed an employee with a medical appointment

6  to work the missed time on another day instead of using paid time off ("PTO"). (Guerrera Depo.,

7  113:23-114:8.)  To request make-up time, the employee submitted an online form that was sent to their

8  supervisor for approval. (Guerrera Depo., 114:9-22.) While he was supervised by Mr. Hargrove,

9  Plaintiff was never denied time off or make-up time. (Plaintiff Depo., 74:6-11.) Plaintiff was also

10  never denied time off for his medical appointments under Ms. Guerrera. (Plaintiff Depo., 154:18-20.)

11  **I.      Plaintiff's First Discrimination and Harassment Complaint on October 2, 2019.**

12  On October 2, 2019, Plaintiff emailed Ms. Porter and Jolane Davis, Ms. Porter's supervisor

13  and a Senior HR Manager, a complaint against Ms. Guerrera regarding gender discrimination and

14  hostile work environment based on Plaintiff's gender transition. (Plaintiff Depo., 241:13-18; Porter

15  Depo. Vol. 1., 57:19-58:12; Porter Decl., ¶ 14, Exhibit I.) In his email to HR, Plaintiff alleged that Ms.

16  Guerrera had created a hostile work environment based on gender, in that the two of them had an

17  ongoing disagreement over Plaintiff using make-up time for the time he was planning to be out for an

18  appointment. *Id.*

19  Soon thereafter, Ms. Porter replied to Plaintiff's email and began an investigation into

20  Plaintiff's complaint. (Porter Depo. Vol. 1, 58:25-59:13, 61:25-62:13.) As part of her investigation,

21  Ms. Porter spoke with Plaintiff, Mr. Castagnetto, and Ms. Guerrera about Plaintiff's complaint and

22  how to address them moving forward. (Porter Depo. Vol. 1, 60:18-62:13.) Plaintiff also reached out

23  to meet with Mr. Castagnetto to share Plaintiff's grievances against Ms. Guerrera. (Plaintiff Depo.,

24  243:15-25.) After his conversation with Ms. Porter, Plaintiff sent a follow-up email to Ms. Porter to

25  thank her for HR and Progressive leadership being so accommodating and supportive of him, stating

26  "[y]ou have not failed me in any kind of way, as a matter of fact you saved my life. Thank you for

27  your support during one of the toughest times in my life. . . . I understand that gender guidelines are

28  new to Progressive and it's a process for everyone." (Porter Decl., ¶ 15, Exhibit J.) Overall, the

investigation determined Plaintiff's allegations of discrimination and harassment were unfounded because Ms. Guerrera was merely asking him to follow company policy regarding requests for time off and make-up time, and Plaintiff was never denied time off.  (Plaintiff Depo., 154:18-20; Porter Decl., ¶ 16, Exhibit K.)

**J.      Plaintiff's Second Complaint of Discrimination, Harassment and Retaliation on January 21, 2020.**

On January 21, 2020, Plaintiff made an anonymous complaint to Progressive's confidential HR hotline to file an internal complaint against both Mr. Castagnetto and Ms. Guerrera. (Plaintiff Depo., 246:2-6; Porter Depo. Vol. 1, 64:12-25.) Plaintiff alleged that for the last four months, Ms. Guerrera and Mr. Castagnetto were harassing him for making a complaint to Human Resources. (Porter Decl., ¶ 16, Exhibit K.) Plaintiff's complaint was assigned to Denise Mora ("Ms. Mora"), a Human Resources Investigator within Progressive's Centralized Human Resources Team, outside of Plaintiff's business area. (Deposition of Denise Mora ("Mora Depo."), 28:14-18.) Ms. Mora was able to identity the anonymous caller as Plaintiff due to the specific nature of the complaint. (Mora Depo., 28:19-24; Porter Decl., ¶ 16, Exhibit K.)

Ms. Mora created an investigation plan to investigate the allegations in Plaintiff's complaint. (Mora Depo., 28:25-29:7.) As part of Ms. Mora's investigation, she: (1) reviewed Progressive's policies and the documents relating to Plaintiff, Mr. Castagnetto, and Ms. Guerrera; (2) reviewed prior complaints; (3) interviewed Mr. Castagnetto and Ms. Guerrera; (4) consulted with Ms. Porter; and (5) responded to Plaintiff. (Mora Depo., 28:25-29:20; Porter Decl., ¶ 16, Exhibit K.) After reviewing documents and several emails between the individuals involved in Plaintiff's complaint and interviewing Mr. Castagnetto, Ms. Guerrera, and Ms. Porter, Ms. Mora reached the following conclusion:

> "Based upon feedback from Michael, Rhonda accurately documents her team members' performance. None of Rhonda's team are on performance management for not meeting job objectives. The only complaint to Human Resources is from [Plaintiff]. Both Michael and Rhonda have met with [Plaintiff] to discuss performance and some of those conversations took place after he complained about Rhonda. There is no evidence to support the feedback is in retaliation for his complaint. At no time has a formal action plan or performance management been discussed with [Plaintiff] and he is not on performance management. His 2019 PE reflects a 'Successful' rating." (Mora Depo., 28:25-29:20, 33:15-20; Porter Decl., ¶ 16, Exhibit K.)

The investigation further found that Plaintiff himself requested to announce his gender transition to other employees at a team meeting more than a year prior to Plaintiff joining Ms. Guerrera's team, and that he was not keeping his transition confidential. (Porter Decl., ¶ 16, Exhibit K.) Additionally, the investigation found that Ms. Guerrera did not discuss his or anyone else's medical information with others and that she gave accurate guidance on completing timesheets with makeup time according to Company policy. *Id.* Further, Ms. Guerrera and Mr. Castagnetto accurately documented the coaching and feedback they gave to Plaintiff regarding his performance, that this feedback was not retaliatory in nature, and no formal performance management disciplinary warnings were ever issued to Plaintiff. *Id.* Accordingly, the allegations made in the January 21st complaint were determined to be unsubstantiated. *Id.*

On February 21, 2020, Ms. Mora responded to Plaintiff detailing the results of her investigation and informing Plaintiff that she did not find any evidence to substantiate the allegations that the caller was denied time off or harassed. (Porter Decl., ¶ 16, Exhibit K.) Ms. Mora reached out to Plaintiff and offered to speak directly with him regarding his allegations, but Plaintiff declined. *Id.*

### K.     Plaintiff's Third Complaint of Discrimination, Harassment and Retaliation on April 17, 2020.

On April 17, 2020, Plaintiff filed another internal complaint alleging discrimination, harassment and retaliation. (Plaintiff Depo., 253:3-7; Porter Depo. Vol. 1, 67:2-10; Mora Depo., 33:21-34:15; Porter Decl., ¶ 18, Exhibit M.)  In this complaint, Plaintiff alleged that Mr. Castagnetto and Ms. Guerrera took the following retaliatory or harassing actions: providing excessive, inaccurate, and unnecessary feedback on Plaintiff's work performance; communicating in harsh tones; not providing him with time off for medical appointments or made it difficult to get the time off; disclosing his confidential medical information; and failing to provide him with a stepladder to assist in his duties. (Porter Decl., ¶ 17, Exhibit L.) Additionally, Plaintiff alleged that Ms. Guerrera had referred to him as "she" rather than "he." *Id.*  For the most part, these were similar or identical issues as Plaintiff's earlier complaints, which were found to be unsubstantiated by the prior investigations. (Mora Depo., 39:6-15; Porter Decl., ¶ 18, Exhibit M.)

Ms. Mora was again assigned as the investigator of Plaintiff's April 2020 complaint. (Mora

Depo., 35:3-10; Porter Decl., ¶ 18, Exhibit M.) As with Plaintiff's anonymous complaint, Ms. Mora developed an investigation plan that involved reviewing the relevant Progressive policies, interviewing Plaintiff, Mr. Castagnetto, and Ms. Guerrera, and assessing the allegations and evidence against the relevant Progressive and workplace policies. (Porter Decl., ¶ 18, Exhibit M.) The investigation into this April 17th complaint found that Plaintiff's allegations were again unsubstantiated: "Based upon my investigation, including consultation with local HR, leaders, review of feedback documentation, and interviews, there is no evidence that [Plaintiff] is being retaliated against or harassed." *Id.* Ms. Guerrera and Mr. Castagnetto's supervision and performance management of Plaintiff was similar to that of his prior supervisors before his transfer to Ms. Guerrera's team. *Id.* Additionally, Plaintiff's former supervisors encountered similar performance issues and pushback from Plaintiff when they supervised and coached him, similar to what Ms. Guerrera had experienced during her supervision of Plaintiff. *Id.* Plaintiff's performance issues, although not rising to the level of requiring a written warning, resulted in feedback on areas he could improve upon, including following required processes surrounding timeliness, documentation, and accuracy. *Id.*

The investigation further revealed once again that Plaintiff was not denied time off for any of his medical appointments, which is undisputed by Plaintiff. (Plaintiff Depo., 74:6-11, 154:18-20.) Also, there was no evidence that Ms. Guerrera made it difficult for Plaintiff to obtain time off. (Porter Decl., ¶ 18, Exhibit M.) Plaintiff was expected to follow Progressive's procedures to get time off, just like all employees. *Id.* Further, Ms. Guerrera did not disclose Plaintiff's confidential medical information, specifically his gender transition. *Id.* The investigation report noted that Plaintiff had previously revealed his gender transition during a branch meeting on August 23, 2018, which was over a year before he joined Ms. Guerrera's team on September 1, 2019. *Id.* Plaintiff's transitioning status was public knowledge through his announcement to the team and Facebook posts, which were visible to several of his coworkers. (Plaintiff Depo., 177:7-15; Porter Decl., ¶ 8, Exhibit C.) The investigation also corroborated Ms. Guerrera's testimony that she had corrected another employee who misgendered Plaintiff on one occasion. (Guerrera Depo., 79:7-80:2; Porter Decl., ¶ 18, Exhibit M.) Finally, Plaintiff's request for a stepladder was considered, but it was denied for non-retaliatory reasons. *Id.*

Based on this investigation, Ms. Mora did not find any violation of its policies in how Plaintiff was treated[1]. *Id.*

### L.     Plaintiff's Leaves of Absence, Resignation, and New Employment.

Plaintiff admits he was never denied time off when he requested a leave of absence during his employment with Progressive. (Plaintiff Depo., 156:22-24.) Plaintiff first requested, and was approved, for a leave of absence in 2017 relating to caring for his grandmother. (Plaintiff Depo., 155:20-24, 156:1-8, 158:3-5, 158:10-12.) Plaintiff next requested, and was again approved, for leaves of absence from January to March 2019 and January 2020 to April 2020. *Id.* Plaintiff requested, and was again approved, for a leave of absence that began on August 2, 2021, for reasons relating to a surgery. *Id.* Plaintiff did not return from his August 2, 2021, leave and resigned from his employment with Progressive on January 31, 2022.

On December 14, 2021, while still employed by Progressive and on a leave of absence, Plaintiff received an offer for the role of Outside Auto Appraiser with Travelers Insurance ("Travelers") out of their Walnut Creek office. (Plaintiff Depo., 237:22-238:5; Rivera Decl., ¶ 3, Exhibit 18.) Plaintiff accepted the offer from Travelers, resigned from Progressive on January 31, 2022, and began his new job in February 2022. (Plaintiff Depo., 238:6-8, 238:18-25.) Plaintiff is still employed at Travelers and his salary is $10,000 more than it was while working at Progressive. (Plaintiff Depo., 238:11-13, 240:16-241:6.)

## III.    LEGAL ARGUMENT

### A.     Progressive Has Met Its Burden For Summary Judgement In This Case.

Summary judgment is proper where the pleadings, discovery, and declarations show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A motion for summary judgment raises the same issue as a motion for judgment as a matter of law at trial under F.R.C.P. Rule 50(a).  In essence, "the inquiry under each is the same:  whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,*

---

[1] On March 10, 2020, Plaintiff filed an EEOC charge of discrimination, which ultimately was dismissed by the EEOC on November 18, 2020, without any investigation, and Plaintiff was issued a right to sue letter.

*Inc.*, 477 U.S. 242, 250 (1986).  The undisputed evidence in this matter establishes that Progressive must prevail as a matter of law.

Here, Progressive can meet its burden by demonstrating that Plaintiff has failed to present any genuine issue of material fact.  *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).  The burden therefore shifts to Plaintiff to go beyond his pleadings and demonstrate the existence of specific admissible evidence showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  Plaintiff cannot create a genuine issue of material fact simply by making assertions in his legal papers; there must be specific, relevant and admissible evidence identifying the basis for the dispute.  *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1980).  This means that Plaintiff cannot use his pleadings to create disputed issues of fact.  *TW Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In addition, Plaintiff cannot submit a declaration contradicting his deposition testimony to create disputed issues of fact.  *Van Asdale v. International Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).

**B.**     **Plaintiff Cannot Establish His First Cause Of Action For Gender Identity And/Or Gender Expression Harassment Because He Has Failed To Establish That He Was Subjected To Any Severe Or Pervasive Conduct.**

The California Fair Employment and Housing Act ("FEHA") prohibits harassment based on "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation or veteran or military status." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 706-707 (2009). Harassment focuses on situations in which the social environment of the workplace becomes intolerable because "the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee"; harassment "refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Id.* For hostile work environment harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." *Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 609 (1989). To succeed on a FEHA harassment claim, a plaintiff must prove, among other things, the following elements: (1) he was subjected to verbal or physical conduct of a harassing nature that was based on his protected class; and (2) the conduct was sufficiently severe or

1    pervasive to create an objectively and subjectively hostile work environment. *Id.*

2    A "hostile work environment" has been described as a workplace "'permeated with

3    "discriminatory intimidation, ridicule and insult," that is "sufficiently severe or pervasive to alter the

4    conditions of the victim's employment and create an abusive work environment." *Beyda v. City of Los*

5    *Angeles*, 65 Cal.App.4th 511, 517 (1998); *Sheffield v. Los Angeles County Dept. of Social Services*,

6    109 Cal.App.4th 153, 161 (2003). "[W]hether an environment is 'hostile' or 'abusive' can be

7    determined only by looking at all the circumstances [including] the frequency of the discriminatory

8    conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

9    and whether it unreasonably interferes with an employee's work performance." *Fuentes v. AutoZone,*

10   *Inc.*, 200 Cal.App.4th 1221, 1227 (2011).  Therefore, "a plaintiff who subjectively perceives the

11   workplace as hostile or abusive will not prevail under the FEHA, if a reasonable person in the plaintiff's

12   position, considering all the circumstances, would not share the same perception." *Lyle v. Warner*

13   *Brothers Television Productions*, 38 Cal.4th 264, 284 (2006).  Here, Plaintiff's alleged gender identity

14   and/or gender expression harassment does not satisfy the required elements to establish an actionable

15   harassment claim.

16   Plaintiff is unable to establish that he was harassed based on his gender identity and/or gender

17   expression. Plaintiff alleges in his Complaint that Defendant engaged in the following harassing

18   conduct: forcing Plaintiff to out himself and disclose medical information to his coworkers; reducing

19   Plaintiff's job authority and work assignments; scrutinizing his work product; misgendering Plaintiff;

20   and questioning Plaintiff's medical care.  (Compl. ¶ 58.)  Plaintiff also alleges that he complained of

21   this harassing conduct, but Defendant failed to take any corrective action.  (Compl.¶ 59.)

22   However, despite these allegations in his Complaint, Plaintiff admits that he was not forced to

23   disclose his gender transition to coworkers, that Progressive and the managers he worked with

24   followed the internal guidelines regarding transgender employees. that he was never forced to do

25   anything he did not want to do, and even recorded a video of himself at work openly discussing his

26   transition with his coworkers. (Plaintiff Depo., 168:8-14; Porter Depo. Vol. 1, 94:14-96:12; Porter

27   Decl., ¶ 18, Exhibit M; Rivera Decl., ¶ 8, Exhibit F.) Rather, Plaintiff voluntarily chose to publicly

28   announce this information with the support and assistance of his supervisors and Human Resources.

*Id.*  Plaintiff's announcement of his gender transition was met with overwhelmingly positive support. (Plaintiff Depo., 108:2-15; Porter Depo. Vol. 1., 100:19-103:9.)   Plaintiff could not produce any evidence that he was mistreated due to his gender identity and/or gender expression.

### 1.   Plaintiff Cannot Establish That He Was Treated Differently Because of His Gender Identity And/Or Gender Expression.

Plaintiff cannot establish that his supervisors treated him differently because of his gender identity and/or gender expression. Plaintiff admits that his authority level varied during his employment with Progressive, the same as with other employees. (Plaintiff Depo. 78:20-80:7.) Plaintiff further testified that his coworkers shared their authority levels with him and admitted that there was a range of varying authority levels rather than everyone being set to maximum. (Plaintiff Depo. 82:12-83:9.)  Plaintiff testified that Mr. Hargrove did eventually increase his authority level, which took place after Plaintiff announced his transition. (Plaintiff Depo. 84:4-14.) As Plaintiff cannot establish that he was treated differently due to his gender identity and/or gender expression, his gender identity and/or gender expression harassment claim should be dismissed.

### 2.   Plaintiff Cannot Establish That The Alleged Harassment Was So Severe Or Pervasive That It Created A Hostile Work Environment.

#### a.   Plaintiff Was Not Subjected To Conduct Severe Enough To Be Unlawful Gender Identity And/Or Gender Expression Harassment As A Matter of Law.

The conduct alleged by Plaintiff falls far short of what is required to establish actionable unlawful gender identity and/or gender expression harassment.  The alleged conduct is not severe enough to be unlawful harassment as a matter of law. Instead, Plaintiff simply did not like how his supervisors criticized his job performance or managed him. (Plaintiff Depo., 77:13-78:19, 83:10-84:9, 142:4-144:14, 148:6-153:7.)

Plaintiff's allegations simply are ordinary workplace tribulations and disagreements between members of the leadership team, which is not unlawful gender identity and/or gender expression harassment.  *Rivas Rosado v. Radio Shak, Inc.*, 312 F.3d 532, 534 (1st Cir. 2002); *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.2d 261, 272 (4th Cir. 2001).  "'[W]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.'  [Citation.]  If

1    every minor change in working conditions or trivial action were a materially adverse action then any

2    'action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a

3    discrimination suit.'"   *Thomas v. Department of Corrections*, 77 Cal.App.4th 507, 511 (2000)

4    (citations omitted).   Here, the alleged reduction in authority level and assignments, along with the

5    alleged micromanaging are simply not severe conduct sufficient to establish Plaintiff's harassment

6    claim.   *See e.g.*, *Gathenji v. Autozoners, LLC*, 703 F.Supp.2d 1017, 1034 (E.D. Cal. 2010) (granting

7    summary judgment to employer on harassment claim because "the conduct [plaintiff] finds harassing-

8    the 'nasty comment,' the condescending tone, and the comments about work performance may be

9    offensive, but is not considered reasonably or objectively to be 'extreme' conduct that rises to the level

10   of harassment under the federal and state statutes. The 'sporadic use of abusive language' or

11   'occasional teasing' is part of the 'ordinary tribulations of the work place,' and is not actionably severe

12   or pervasive.'")   "Requiring an employee to prove a substantial adverse job effect 'guards against both

13   "judicial micromanagement of business practices," [citation] and frivolous suits over insignificant

14   slights.'"   *Akers v. County of San Diego*, 95 Cal.App.4th 1441, 1455 (2002).   The conduct alleged by

15   Plaintiff simply does not amount to unlawful workplace harassment as a matter of law.

16          Moreover, some of the alleged conduct, specifically reviewing Plaintiff's caseload,

17   questioning Plaintiff's files, or assigning Plaintiff various field inspections, are examples of common

18   personnel management tasks that are outside the scope of actionable harassment. *See, e.g.*, *Reno v.

19   Baird*, 18 Cal.4th 640, 645–46 (1998) (stating that unlike discrimination claims, harassment "consists

20   of conduct outside the scope of necessary job performance of a supervisory job."); *Janken v. GM

21   Hughes Elec.*, 46 Cal.App.4th 55, 63–65 (1996) ("[h]arassment is not conduct of a type necessary for

22   management of the employer's business or performance of the supervisory employee's job").

23   Plaintiff's allegations of lowered authority level, work assignments, and even criticism regarding his

24   job performance (which was also provided to other cisgendered employees) is not actionable sex

25   harassment.   Accordingly, while Plaintiff may have believed the alleged conduct unfair, it is not

26   actionable harassment. *See Roby v. McKesson Corp.*, 47 Cal.4th 686, 706 (2009) ("harassment focuses

27   on situations in which the social environment of the workplace becomes intolerable because the

28   harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed

employee").  Plaintiff cannot establish that he was subjected to conduct other than ordinary workplace supervision.  (Plaintiff Depo., 77:13-78:19, 83:10-84:9, 142:4-144:14, 148:6-153:7.)

In fact, Progressive conducted three separate investigations into Plaintiff's allegations following his internal complaints and found no evidence to show that the management of Plaintiff was any different than his coworkers. (Mora Depo., 28:25-29:20, 33:15-20, 39:6-15; Porter Decl., ¶¶ 16 and 17, Exs. K and L.) Thus, Plaintiff's first cause of action alleging FEHA harassment because of gender identity and/or gender expression against Defendant fails as a matter of law because there is no evidence that he was subjected to unlawful harassing conduct.

### b. Plaintiff Was Not Subjected To Conduct Pervasive Enough To Be Unlawful Gender Identity And/Or Gender Expression Harassment As A Matter of Law.

In addition, the alleged harassing conduct was not pervasive enough to be actionable as a matter of law. *See, e.g.*, *Hughes v. Pair*, 46 Cal.4th 1035, 1049 (2009) ("harassing conduct must consist of more than a few isolated incidents"); *Lyle*, 38 Cal.4th 264, 283 (there is no recovery "for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature") Plaintiff testified that there were only two instances where he believed he was intentionally misgendered, once by Mr. Sonke and once by Ms. Guerrera. (Plaintiff Depo. 127:19-130-18, 146:5-21.)   Plaintiff further testified that when his colleagues addressed him by the wrong pronouns, he would correct them, and colleagues then addressed him by his preferred pronouns without an issue. (Plaintiff Depo., 123:12-124:4.)  Plaintiff's testimony establishes he was not subject to a hostile work environment because the alleged conduct occurring on an occasional basis is not pervasive and Plaintiff's gender identity and/or gender expression harassment claims should be dismissed as a matter of law.  *See Mokler v. County of Orange*, 157 Cal.App.4th 121, 142 (2007).

Similarly, Plaintiff's characterization of the August 23, 2018 meeting as a "forced" outing of his transition defies Plaintiff's own testimony, communications with his managers at the time, and Plaintiff's self-record video. (Plaintiff Depo., 56:16-24, 168:8-14; Porter Depo. Vol. 1, 94:14-96:12; Porter Decl., ¶¶ 7-10, Exs. B, C, D, and E; Rivera Decl., ¶ 8, Exhibit F.)  Plaintiff admits he voluntarily chose to disclose this information with the support and assistance of his supervisors and Human

1    Resources, and the announcement of his gender transition was met with overwhelmingly positive

2    support, as evidenced by Plaintiff's self-record video. (Plaintiff Depo., 108:2-15, 168:8-14; Porter

3    Depo. Vol. 1., 100:19-103:9; Rivera Decl., ¶ 8, Exhibit F.) Again, Plaintiff cannot point to a single

4    instance of actionable harassment.   *Mokler,* 157 Cal.App.4th at 142.

5          **C.**    **Plaintiff's Gender Identity And/Or Gender Expression Discrimination Claim**

6                **Fails Because Plaintiff Was Not Subjected To An Adverse Employment Action Due To His Gender Identity And/Or Gender Expression.**

7    Upon a motion for summary judgment, discrimination and retaliation claims are analyzed

8    under the burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792

9    (1973); *Guz v. Bechtel Nat'l, Inc.*, 72 Cal.4th 317, 354 (2000).  First, Plaintiff must be able to establish

10   a *prima facie* case of discrimination and retaliation. An employer will be liable for intentional

11   discrimination if it is shown that its employment decision was premised upon an illegitimate criterion.

12   *Heard v. Lockheed Missiles & Space Co.*, 44 Cal.App.4th 1735, 1748 (1996). A claim asserting a

13   violation of this provision is a 'disparate treatment' claim. *McCaskey v. California State Automobile*

14   *Assn.*, 189 Cal.App.4th 947, 979 (2010). To establish a *prima facie* case, Plaintiff has the burden of

15   establishing: (1) the employee's membership in a classification protected by the statute; (2)

16   discriminatory animus on the part of the employer toward members of that classification; (3) an action

17   by the employer adverse to the employee's interests; (4) a causal link between the discriminatory

18   animus and the adverse action; (5) damage to the employee; and (6) a causal link between the adverse

19   action and the damage. *Id.*

20   If Plaintiff is successful in establishing a *prima facie* case, the burden shifts to Progressive to

21   "'produc[e] evidence' that the adverse employment actions were taken 'for a legitimate,

22   nondiscriminatory reason.'" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, at 506-507.  The

23   Supreme Court has stressed that the burden on a defendant is only one of *production* and "the ultimate

24   burden of *persuading* the trier of fact that the defendant intentionally discriminated against the plaintiff

25   remains at all times with the plaintiff." *Id*. (emphasis added).  To survive summary judgment, Plaintiff

26   must be able to produce sufficient evidence to satisfy his burden of persuasion and "prove by a

27   preponderance of the evidence that the legitimate reasons offered by [Progressive] were not its true

28   reasons, but were a pretext *for discrimination*." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133,

143 (2000) (emphasis added). In order to defeat Progressive's motion for summary judgment, the evidence of pretext produced by Plaintiff must be "specific and substantial." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1097-98 (9th Cir. 2005). Progressive is entitled to judgment as a matter of law "if [Plaintiff] create[s] only a weak issue of fact as to whether [Progressive's] reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148; *Guz*, 24 Cal.4th at 356, 362. Plaintiff cannot satisfy his burden to establish Progressive's conduct was pretextual for unlawful discrimination.

1.   **Plaintiff's Reduction In Authority Level and Work Assignments Cannot Satisfy His Burden To Set Forth An Adverse Employment Action To Establish His Discrimination Claim.**

To the extent Plaintiff contends the reduction in authority level and work assignments were the basis of his discrimination claim, Plaintiff cannot establish that the reduction in his authority level and work assignments were adverse employment actions, thereby negating an essential element of his discrimination claim. "Not every employment decision amounts to an adverse employment action." *Strother v. Southern Cal. Permanente Med. Group,* 79 F.3d 859, 869 (9th Cir. 1996). Rather, the California Supreme Court adopted a materiality test to determine whether there has been an adverse employment action. *Yanowitz v. L'Oreal USA, Inc*., 36 Cal.4th 1028, 1036 (2005) ("we conclude that the proper standard for defining an adverse employment action is the 'materiality' test"). To be actionable, the alleged adverse employment action must "materially affect the compensation, terms, conditions, or privileges of employment." *Id*. at 1051. Put another way, an adverse employment action "requires a '*substantial adverse change in the terms and conditions of the plaintiff's employment*.'" *Holmes v. Petrovich Dev. Co., LLC,* 191 Cal.App.4th 1047, 1063 (2011), citing *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1454 (2002) (emphasis added). Courts universally agree that certain actions, such as termination, refusal to consider for promotion, refusal to hire, and reduction in pay or demotion qualify as adverse employment actions, but none of those actions happened to Plaintiff. See *Wilson v. Murillo* (2008) 163 Cal.App.4th 1124, 1134. Plaintiff admits that reductions to his authority level and work assignments were temporary and were increased over time, including after he announced his transition. (Plaintiff Depo., 77:13-78:19, 83:10-84:9.) Such actions did not impact his employment, nor do they amount to an adverse employment action sufficient to support a

discrimination claim.

Plaintiff testified that his authority level and work assignments were reduced after he returned to the role of an MRR and began working under Mr. Hargrove. (Plaintiff Depo., 77:13-78:19, 83:10-84:9.) This was the first time Plaintiff worked under Mr. Hargrove as an MRR.  Mr. Hargrove told Plaintiff that the reduction was because Hargrove was unfamiliar with Plaintiff's work. *Id.* Plaintiff further testified that coworkers under Mr. Hargrove also had varying levels of authority and that Hargrove increased Plaintiff's authority level and assignments after a few months and after Plaintiff announced his transition. *Id.* Plaintiff admits that the reductions were temporary, due to Plaintiff transferring into a role he had been out of for two years, and his authority was increased after he announced his transition.  (Plaintiff Depo., 84:4-17.) Moreover, the temporary reduction did not impact his employment.  Therefore, the reductions were not an adverse employment action sufficient to establish his discrimination claim. *Holmes,* 191 Cal.App.4th at 1063.

### 2.    Plaintiff Was Not Denied A Promotion Due To His Gender Identity And/Or Gender Expression.

Plaintiff alleges that he was discriminated against when he was not promoted.  (Compl., ¶¶ 30, 66, 76, and 77.)  However, Plaintiff cannot establish that his gender identity and/or gender expression was the reason he was denied the promotion.  The undisputed evidence establishes that Plaintiff was not promoted to the supervisor position he applied for because he did not perform well at his interview and the person who received the promotion was qualified for it. (Plaintiff Depo., 41:22-42:16; Castagnetto Depo., 43:15-44:20; Porter Depo., 84:10-86:12.) During the interview, Plaintiff was treated the same and asked the same types of questions as the other candidates. *Id.* However, Plaintiff did not give satisfactory responses to the interview questions, especially compared to the candidate who was selected. *Id.* Plaintiff even admitted that he had no concerns with the interview process or questions during a later investigation. (Mora Depo., 33:21-34:15; Porter Decl., ¶ 17, Exhibit L.) In addition, there is no inference of discrimination because Plaintiff cannot demonstrate that he was more qualified than the person who did get the position as he admitted that this individual was "absolutely" qualified for the role. (Plaintiff Depo., 42:17-25.)

NOTICE OF MOTION AND MPA IN
SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT/PARTIAL
SUMMARY JUDGMENT
27.
CASE NO. 5:21-CV-02602

3.   **Progressive Has Met Its Burden Of Demonstrating A Legitimate, Non-Discriminatory Reason For Plaintiff's Reduction in Authority Level And Work Assignments And Plaintiff's Promotion Denial And Plaintiff Cannot Establish That His Termination Was Pretextual So As To Establish His Discrimination Claims.**

Aside from his lack of promotion, Plaintiff has not identified any other tangible discipline or detrimental employment action he suffered in support of his discrimination claim. As demonstrated above, Progressive decided to select a more qualified internal candidate who performed better during the interview process, which satisfies its burden to set forth a legitimate non-discriminatory reason for not giving Plaintiff the promotion. (Plaintiff Depo., 42:17-25; Castagnetto Depo., 39:12-40:4, 43:24-44:2.) As such, to be able to establish his discrimination claim, Plaintiff must set forth evidence that Progressive's reason for not promoting him is pretextual and the real reason was discrimination. *Reeves*, 530 U.S. at 148; *Guz*, 24 Cal.4th at 356, 362.  Plaintiff cannot meet his burden.

Plaintiff does not have the "specific and substantial" evidence of pretext necessary to defeat Progressive's motion for summary judgment on his discrimination claim based on failing to be selected for the supervisor role (and the temporary reduction in authority level and work assignments, to the extent they are found to be adverse actions).  *See Coghlan,* 413 F.3d 1090, at 1097-98.  Plaintiff's evidence must demonstrate that Progressive's reason for any adverse employment action is both false and that intentional discrimination based on his gender identity and/or gender expression is the real reason for the adverse action.  *Reeves*, 530 U.S. at 142; *Guz, supra,* 24 Cal.4th at 356, 361.  "Temporal proximity alone is not sufficient to raise a triable issue as to pretext once an employer has offered evidence of a legitimate, nondiscriminatory reason for the [adverse employment action]."  *Rey v. C & H Sugar Co.*, 609 Fed. Appx. 923 (9th Cir. 2015) (quoting *Arteaga v. Brink's, Inc.*, 163 Cal.App.4th 327, 353 (2008).  Pretext is typically demonstrated where a plaintiff offers evidence that "the employer has offered shifting, contradictory, implausible, uninformed, or factually baseless justifications for its actions."  *Guz*, 24 Cal.4th at 363.  Plaintiff has no such evidence to satisfy his burden.

Plaintiff must do more than simply assert that Progressive's decision was wrong, mistaken, or unwise. *Guz*, 24 Cal.4th at 363.; *Slatkin v. Univ. of Redlands*, 88 Cal.App.4th 1147, 1157 (2001).  Any contention by Plaintiff that Progressive was unwise in its decision to not select Plaintiff for the supervisor role is insufficient to raise an inference of pretext in the face of the plentiful evidence of

the legitimate reason that Progressive has offered. *See Guz*, 24 Cal.4th at 358 ("if nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct"). Again, Plaintiff admits that the individual selected over him for the supervisor role was "absolutely" qualified for it and was selected based on better qualifications and performance during the interview process. (Plaintiff Depo., 41:22-42:16; Castagnetto Depo., 43:15-44:20; Porter Depo., 84:10-86:12.) Plaintiff has no evidence to rebut Progressive's legitimate reasons for its actions; thus, Progressive's motion as to this claim should be granted.

### D.    Plaintiff's FEHA Retaliation Claims Fail Because Plaintiff Was Not Subjected To An Adverse Employment Action Due To His Protected Activities.

Retaliation claims are analyzed under the same burden-shifting framework for discrimination claims, as set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Guz v. Bechtel Nat'l, Inc.*, 72 Cal.4th 317, 354 (2000). To establish a *prima facie* case of retaliation, Plaintiff must show: (1) he engaged in a protected activity,[2] (2) Progressive subjected him to an adverse employment action, and (3) there is a causal link between the two. *Mokler,* 157 Cal. App. 4th at 138; see also Cal. Gov. Code § 12940(h). For the same reasons that Plaintiff's discrimination claim fails, the undisputed facts demonstrate that Plaintiff cannot establish that he suffered an adverse action due to engaging in protected activity.

### 1.    On A Pure Temporal Basis, Plaintiff Not Being Selected For The Supervisor Role Cannot Satisfy Plaintiff's Burden To Set Forth An Adverse Employment Action Connected To His Protected Conduct To Establish His Retaliation Claim.

Plaintiff cannot establish a connection between his protected conduct and an adverse employment action. Again, the only adverse action identified by Plaintiff was his failure to be promoted. Plaintiff interviewed for the position in March 2019, approximately seven months prior to his first complaint of discrimination and harassment, made on October 2, 2019. (Plaintiff Depo., 241:13-18; Porter Depo. Vol. 1., 57:19-58:12.) Plaintiff testified that he did not apply for any additional supervisor roles following the March 2019 interview. (Plaintiff Depo., 45:9-11.) Plaintiff cannot establish a connection between protected activity and an adverse action. Thus, his retaliation

---

[2] Progressive is not disputing that Plaintiff engaged in protected activities during his employment with the Company.

1  claim should be dismissed. *Mokler,* 157 Cal. App. 4th at 138.

2  **2.  Alternatively, Progressive Had A Legitimate Non-Retaliatory Reason For
     Not Promoting Plaintiff So That Plaintiff Cannot Establish His Retaliation
3    Claim.**

4  Even if the failure to be promoted is somehow connected to Plaintiff's protected activity, as

5  explained above, this failure to promote was due to Plaintiff's poor performance during the interview

6  for the position. (Castagnetto Depo., 43:15-20; Porter Depo. Vol. 1, 84:21-86:5.) Also, during an

7  investigation following his complaints about alleged retaliation, Plaintiff admitted nothing about this

8  interview was improper.  Plaintiff simply did not perform well during the interview and was turned

9  down for the position in favor of another qualified individual. (Mora Depo., 33:21-34:15; Porter Decl.,

10 ¶ 17, Exhibit L.)  Once more, Plaintiff cannot establish that his denied promotion was for unlawful

11 reasons.

12 **IV.    CONCLUSION**

13 For the reasons stated above, all of Plaintiff's causes of action fail and Progressive is entitled

14 to judgment as a matter of law.  Progressive therefore respectfully requests full summary judgment

15 be entered in its favor.  In the alternative, Progressive moves for partial summary judgment on those

16 claims or issues the Court finds that Plaintiff cannot established as a matter of law.

17 Dated: June 12, 2023

18

19                                        */s/ Alan Rivera*
                                         Robert J. Wilger
20                                        Joy C. Rosenquist
                                         Alan Rivera
21                                        LITTLER MENDELSON P.C.
                                         Attorneys for Defendant
22                                        PROGRESSIVE CASUALTY INSURANCE
                                         COMPANY
23

24 4858-4137-1498.4 / 076059-1096

25

26

27

28