1  Robert J. Wilger, Bar No. 168402
   rwilger@littler.com
2  LITTLER MENDELSON P.C.
   50 W. San Fernando, 7th Floor
3  San Jose, California 95113
   Telephone:   408.998.4150
4  Fax No.:      408.288.5686

5  Joy C. Rosenquist, Bar No. 214926
   jrosenquist@littler.com
6  LITTLER MENDELSON P.C.
   500 Capitol Mall, Suite 2000
7  Sacramento, California 95814
   Telephone:   916.830.7200
8  Fax No.:      916.561.0828

9  Attorneys for Defendant
   PROGRESSIVE CASUALTY INSURANCE
10 COMPANY

11

12                 UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                     SAN JOSE DIVISION

15

16 JOHN DOE,                              Case No. 5:21-cv-02602-BLF

17              Plaintiff,                *Assigned to Judge Beth Labson Freeman*

18      v.                                DEFENDANT PROGRESSIVE
                                          CASUALTY INSURANCE COMPANY'S
19 PROGRESSIVE CASUALTY INSURANCE         REPLY TO PLAINTIFF'S OPPOSITION
   COMPANY, a Ohio Corporation; and DOES 1- TO DEFENDANT'S MOTION FOR
20 50,                                    SUMMARY JUDGMENT OR, IN THE
                                          ALTERNATIVE, PARTIAL SUMMARY
21              Defendant.                JUDGMENT

22                                        Date:      August 24, 2023
                                          Time:      9:00 am
23                                        Location:  Courtroom 1, 5th Floor

24                                        Complaint filed:  February 16, 2021
                                          Trial Date:       January 22, 2024
25

26

27

28

4863-8698-9938.1 / 076059-1096

DEFENDANT'S REPLY TO PLAINTIFF'S
OPPOSITION TO DEF'S MSJ                                    CASE NO. 5:21-CV-02602

# TABLE OF CONTENTS

PAGE

I.     INTRODUCTION...................................................................................................... 1

II.    PLAINTIFF FAILED TO SET FORTH ANY EVIDENCE ESTABLISHING
       THAT HE WAS SUBJECTED TO SEVERE OR PERVASIVE CONDUCT
       AMOUNTING TO UNLAWFUL HARASSMENT. ............................................. 2

       A.     Plaintiff Failed To Establish A Link Between Defendant's Alleged Conduct
              To His Protected Status................................................................................... 3

       B.     Plaintiff Failed To Establish He Suffered Severe And Pervasive Harassment
              That Rose To Unlawful Levels. ...................................................................... 5

       C.     Plaintiff Failed To Establish He Worked In A Subjectively And Objectively
              Hostile Work Environment. ............................................................................ 6

III.   PROGRESSIVE'S ROUTINE PERSONNEL MATTERS AND STANDARD
       OVERSIGHT DO NOT CONSTITUTE "ADVERSE EMPLOYMENT
       ACTIONS" SUFFICIENT TO SUPPORT PLAINTIFF'S CLAIM AND
       PLAINTIFF FAILED TO ESTABLISH THAT OTHER SIMILARLY
       SITUATED EMPLOYEES WERE TREATED DIFFERENTLY................................. 7

       A.     Defendant Engaged In Standard Oversight Of Plaintiff No Different Than
              With Other Employees..................................................................................... 8

              1.     MRR Authority Changes Are Standard When Newly Assigned To The
                     Role Under A New Supervisor. ............................................................ 8

              2.     Changes To Plaintiff's Work Schedule And Assignments Are Typical
                     Employment Occurrences And Did Not Constitute An Actionable
                     Adverse Employment Action................................................................. 9

       B.     Plaintiff Was Free To Use Whatever Restroom Facilities He Wanted And Did
              Not Suffer An Adverse Employment Action.................................................... 9

       C.     Progressive Choosing Another Qualified Candidate For Promotion Was A
              Routine, Non-discriminatory Personnel Matter That Plaintiff Cannot Prove
              AsPretextual.................................................................................................10

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

D.   Progressive's Name Change Procedure Is A Standard Personnel Matter That Applies To All Employees Who Want To Change Their Name For Whatever Reason. ................................................................................................ 10

E.   Plaintiff's transfer to the Gilroy office was not an adverse employment action ....... 11

F.   Plaintiff Received Overall "Successful" Ratings On His Performance Reviews Both Before And After The Transgender Announcement. ........................................ 11

G.   Guerrera's supervision of the Plaintiff consisted of standard, routine interactions. ................................................................................................... 11

IV.   PLAINTIFF HAS FAILED TO DEMONSTRATE THE STATED REASON FOR ANY ALLEGED ADVERSE ACTION WAS NOT THE TRUE REASON AND WAS A PRETEXT FOR DISCRIMINATION. ....................................... 11

V.   PLAINTIFF HAS FAILED TO DEMONSTRATE ANY RETALIATORY CONDUCT FOLLOWING HIS INTERNAL AND EEOC COMPLAINTS AND ANY CONNECTION BETWEEN HIS COMPLAINTS AND ADVERSE EMPLOYMENT ACTIONS. ............................................................................ 13

VI.   PROGRESSIVE OBJECTS TO THE DECLARATIONS OF TORIA THOMAS AND CHRIS NEWELL AND ASKS THIS COURT TO STRIKE THEIR TESTIMONY. ..................................................................................................... 13

A.   The Declaration of Toria Thomas is speculative and lacks foundation .................. 14

B.   The Declaration of Chris Newell is Speculative and lacks foundation. .................. 14

VII.   CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akers v. County of San Diego*,
  95 Cal.App.4th 1441 (2002) ....................................................................7

*Bliesner v. Communication Workers of America*,
  464 F.3d 910 (9th Cir. 2006) ...............................................................13

*Chen v. County of Orange*,
  96 Cal.App.4th 926 (2002) .....................................................................4

*Coghlan v. American Seafoods Co. LLC*,
  413 F.3d 1090 (9th Cir. 2005) ........................................................10, 12

*Cozzi v. County of Marin*,
  787 F. Supp. 2d 1047 (N.D. Cal. 2011) ................................................2

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) ................................................................................2

*Holmes v. Petrovich Dev. Co., LLC*,
  191 Cal.App.4th 1047 (2011) ................................................................7

*Horta v. Sullivan*,
  4 F.3d 2, 39 Fed. R ...............................................................................13

*Jones v. Dept. of Corrections and Rehabilitation*,
  152 Cal. App. 4th 1367 (2007) ...........................................................5, 6

*Lyle v. Warner Brothers Television Productions*,
  38 Cal.4th 264 (2006) ............................................................................2

*McCoy v. Pacific Maritime Ass'n*,
  216 Cal.App.4th 283,293-294 (2013) ....................................................5

*Mercantile Nat. Bank at Dallas v. Franklin Life Ins. Co.*,
  248 F.2d 57 (5th Cir. 1957) .................................................................13

*Ramos v. Roche Products, Inc.*,
  936 F2d 43 (1st Cir. 1991) ...................................................................13

*Reeves v. Sanderson Plumbing Prods.*,
  530 U.S. 133 (2000) ....................................................................9, 10, 12

*Rey v. C & H Sugar Co.*,
   609 Fed. Appx. 923 (9th Cir. 2015).....................................................................10

*Roby v. McKesson Corp.*,
   47 Cal. 4th 686 (Cal. 2009)...........................................................................2, 8, 9

*Slatkin v. Univ. of Redlands*,
   88 Cal.App.4th 1147 (2001) .....................................................................10, 12

*Speedfit LLC v. Woodway USA, Inc.*,
   432 F. Supp. 3d 183 (E.D. N.Y. 2020) .....................................................13

*Strother v. Southern Cal. Permanente Med. Group*,
   79 F.3d 859 (9th Cir. 1996) .................................................................................7

*Surrell v. California Water Service Co.*,
   518 F.3d 1097 (9th Cir. 2008) ...........................................................................4

**Other Authorities**

California Code of Regulations Section 11034 ...............................................5

Federal Rule of Evidence 602.........................................................................13

iv

1

# I.   INTRODUCTION

Defendant Progressive Casualty Insurance Company's Motion for Summary Judgment or, In the Alternative, Partial Summary Judgement should be granted because Defendant's conduct, as alleged, even if true, does not rise to the level of actionable harassment as it was neither extreme nor outrageous.  Plaintiff John Doe fails to address Defendant's undisputed evidence and authorities, or offer admissible evidence demonstrating a material dispute exists on any of his causes of action. Instead, Plaintiff's opposition relies primarily on self-serving statements setting forth pure speculation, which directly contradict his sworn deposition testimony and inadmissible declarations by witnesses who did not witness any unlawful conduct and assert pure speculation.  As such, Plaintiff cannot create a material triable issue of fact and the Court should grant Defendant's motion.

This Court must view the undisputed evidence using established law to determine if Plaintiff's allegations rise to the level of actionable harassment.  There is no dispute that Plaintiff cannot meet this burden.  The undisputed evidence demonstrates that Defendant's conduct falls far short of other hostile work environment harassment cases where courts have granted summary judgment.  For example, Plaintiff has failed to demonstrate that the alleged conduct by Defendant was in fact based on Plaintiff's transgender status other than by pure speculation.  There are absolutely zero statements by any supervisor making a negative comment about Plaintiff or Plaintiff's transition.  Further, Plaintiff's own statements establish that he worked in the field and rarely interacted with the supervisors he now accuses of harassment, and, therefore, any allegations of unlawful treatment could not have been severe or pervasive or created an objectively and subjectively hostile work environment.  Similarly, the declarations Plaintiff submitted did not describe conduct that Plaintiff observed.  As such, Plaintiff's harassment claim fails.

Likewise, Plaintiff failed to provide evidence that he suffered any adverse action that could be attributed to his transitioning status.  Once more, Plaintiff offers pure speculation as to why certain actions were taken against him and fails to rebut any of the supervisors' legitimate non-discriminatory reason for the actions to which Plaintiff now complains.  Plaintiff cannot create a triable issue through speculation and conjecture.

///

1      Similarly, Plaintiff's retaliation claim should be dismissed as a matter of law as Plaintiff failed

2 to set forth any evidence of an adverse action occurring after his complaints of discrimination and

3 harassment and prior to his voluntary resignation.  Plaintiff simply sets forth the same alleged conduct

4 forming the basis of his internal and EEOC complaints to support his retaliation claim.  Therefore,

5 Plaintiff failed to establish any connection between a protected complaint and an adverse action.

6 **II.    PLAINTIFF FAILED TO SET FORTH ANY EVIDENCE ESTABLISHING THAT**
**HE WAS SUBJECTED TO SEVERE OR PERVASIVE CONDUCT AMOUNTING**
7 **TO UNLAWFUL HARASSMENT.**

8      Plaintiff's argument in opposition to Defendant's motion is that the allegations against

9 Defendant should be considered in their totality, and, therefore, Plaintiff has provided sufficient

10 evidence to survive summary judgment and create a triable issue of fact on this claim.  (See Plaintiff's

11 Opposition, pp.12-13.)  Plaintiff's argument fails to meaningfully address Defendant's evidence,

12 arguments and the authorities in support thereof.  "[H]arassment focuses on situations in which the

13 *social environment* of the workplace becomes intolerable because the harassment (whether verbal,

14 physical, or visual) communicates an offensive message to the harassed employee."  *Roby v.*

15 *McKesson Corp.,* 47 Cal. 4th 686, 706 (Cal. 2009) (emphasis in original).  Plaintiff failed to set forth

16 evidence that his work environment was in fact both objectively and subjectively hostile, that he

17 perceived it as such, and a reasonable person would have as well.  *Cozzi v. County of Marin,* 787 F.

18 Supp. 2d 1047, 1069 (N.D. Cal. 2011).  "A determination of whether conduct qualifies as hostile under

19 this standard includes its frequency, severity, and nature, including whether it is physically threatening

20 or humiliating as opposed to merely verbally offensive."  *Id.* at 1070 (citing *Galdamez v. Potter,* 415

21 F.3d 1015, 1023 (9th Cir. 2005)).  Plaintiff failed to set forth any offensive conduct, much less

22 "physically threatening or humiliating conduct."  Furthermore, even if Plaintiff could have set forth

23 evidence of offensive conduct, "Title VII and FEHA do not proscribe a general civility code in the

24 workplace."  *Cozzi,* 787 F. Supp. 2d at 1070 (citing *Manatt v. Bank of America, N.A.,* 339 F.3d 792,

25 798 (9th Cir. 2003)), *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998), *Lyle v. Warner*

26 *Brothers Television Productions*, 38 Cal.4th 264, 295 (2006).)  Plaintiff failed to meet his burden of

27 establishing that he was subjected to severe and pervasive conduct based on his protected status

28 sufficient to establish his harassment claim.

A.      **Plaintiff Failed To Establish A Link Between Defendant's Alleged Conduct To His Protected Status.**

With the exception of Plaintiff's pronoun argument, there is no evidence linking Defendant's alleged conduct to Plaintiff's protected transgender status.  For example, Plaintiff did not set forth evidence that anyone, much less his supervisor, ever made any anti-trans comments or negative comments about Plaintiff's transition.  In fact, the undisputed evidence establishes that Plaintiff's supervisors supported Plaintiff's transition.  In July 2018, Plaintiff voluntarily informed Mr. Hargrove, his supervisor at the time, about his gender transition and that he was going to submit his story about his gender transition as part of Progressive's National Coming Out Day ("NCOD") celebration. (Plaintiff Depo., 168:19-169:12, 172:1-173:1, 173:25-174:4); Porter Decl., ¶ 7, Exhibit B.)  Mr. Hargrove responded 5 minutes later, writing: "Awesome! If you get chosen, let me know. Good luck!" (Plaintiff Depo., 169:15-19; Porter Decl., ¶ 7, Exhibit B.)  Plaintiff understood that should his video be selected, it would be shared throughout the company. *Id.*

Similarly, on August 17, 2018, Plaintiff and Mr. Hargrove discussed setting a timeline for Plaintiff to formerly announce his transition and begin working as a male, since Plaintiff's planned October transition date was approaching. (Declaration of Jessette Porter Vol. 1 ("Porter Depo. Vol. 1"), 94:14-96:12; Porter Decl., ¶ 9, Exhibit D.) A meeting with Plaintiff's entire team was already scheduled for August 23, 2018, and Plaintiff suggested that date to announce his transition. *Id.*  Since the date was less than a week away, Mr. Hargrove discussed the matter with Jessette Porter, a Human Resources Consultant who Plaintiff was already working with regarding his transition at Progressive. (Plaintiff Depo., 56:16-24; Porter Decl., ¶ 9, Exhibit D.)  After the August 23, 2018 date, was confirmed, Mr. Hargrove and Ms. Porter consulted with Plaintiff to determine exactly who should know about Plaintiff's transition and be present for the announcement. (Porter Depo. Vol. 1, 97:20-98:21.)  All the individuals that were present for Plaintiff's announcement were approved by Plaintiff prior to the meeting. *Id.*

A few days before the August 23, 2018 meeting, Plaintiff's grandmother passed away. (Porter Depo. Vol. 1, 98:24-99:24; Porter Decl., ¶ 10, Exhibit E.) Both Mr. Hargrove and Ms. Porter spoke with Plaintiff and asked him whether he wanted to continue with his announcement as planned or

postpone the August 23, 2018 meeting. (Porter Depo. Vol. 1, 99:8-100:18.) Plaintiff told Ms. Porter that he did not want to postpone the announcement, because his grandmother was one of his biggest supporters and he wanted to continue with the announcement for his grandmother. *Id.* Plaintiff himself admitted that throughout this process, Progressive and the managers he worked with followed the internal guidelines Progressive used regarding transgender employees and that he was never forced to do anything. (Plaintiff Depo., 168:8-14; 261:1-25.)

On August 23, 2018, Plaintiff made his public announcement about his gender transition to the Progressive team. (Plaintiff Depo., 92:4-20; Porter Depo. Vol. 1, 99:10-100:18.) Although some of Plaintiff's coworkers were surprised by his announcement, other of Plaintiff's coworkers and managers were "absolutely" supportive of Plaintiff. (Plaintiff Depo., 108:2-16; Porter Depo. Vol. 1., 100:19-103:9.)   Plaintiff's managers were visibly emotional at the meeting and several of his coworkers went up to Plaintiff to express their support. (Porter Depo. Vol. 1., 100:19-103:9.)

The evidence demonstrates that Plaintiff had control over the timing of his announcement, the content, and the attendees of the meeting.  It is not surprising that this kind of meeting of a personal nature could be uncomfortable, given the sensitive nature of the topic.  An uncomfortable meeting does not rise to the level of harassment or discrimination, nor does it create an adverse employment action.  Plaintiff's perceived lack of support during or after his transition announcement meeting is purely speculative, conclusory, and of no legal consequence.[1]

Without the foundational link to Plaintiff's protected categories, Plaintiff's allegations cannot form the basis of a harassment claim. *See Surrell v. California Water Service Co.,* 518 F.3d 1097, 1108 (9th Cir. 2008) (granting summary judgment on race harassment claim where plaintiff "presents

---

[1] Plaintiff publicly announced his transition to a group of Progressive employees, and then tries to keep the proverbial "cat in the bag" during other workplace encounters, expecting none to know about his announcement.  It is not reasonable to expect complete confidentiality of a fact once announced to a group of coworkers and supervisors.  Similarly, although Plaintiff now claims he intended the National Coming Out Day video to only stay within the Employee Resource Group, such an expectation is simply not reasonable because he made the video in a public space while speaking to coworkers around him.  (Declaration of Alan M. Rivera ("Rivera Decl."), ¶ 8, Exhibit F.)  In fact, he raises the phone to show everyone sitting in their cubicles behind him who all shout positive words of encouragement.  Lastly, Plaintiff makes no plea for secrecy in the actual video; he does not ask the audience watching the video to keep it confidential.  *Id.*  Knowledge and communication among coworkers of a transgender announcement does not a harassment claim make.

DEFENDANT'S REPLY TO PLAINTIFF'S
OPPOSITION TO DEF'S MSJ                    4.                    CASE NO. 5:21-CV-02602

no evidence that [defendant's] comments were based on race"); *Chen v. County of Orange,* 96 Cal.App.4th 926, 94849 (2002).

**B.     Plaintiff Failed To Establish A He Suffered Severe And Pervasive Harassment That Rose To Unlawful Levels.**

Even if Defendant's alleged conduct was based on Plaintiff's protected categories, which it is not, it is not severe or pervasive enough to rise to the level of unlawful harassment.  Plaintiff's harassment allegations do not rise anywhere near the level of conduct in other cases where courts have found no unlawful harassment. *See, e.g., McCoy v. Pacific Maritime Ass'n,* 216 Cal.App.4th 283,293-294 (2013); *Jones v. Dept. of Corrections and Rehabilitation,* 152 Cal. App. 4th 1367, 1377-78 (2007). At most, Plaintiff sets forth a few instances when employees used the wrong pronoun, but presented no evidence that the misuse of the pronoun was intentional or that it is unlawful when employees inadvertently use the wrong pronoun.[2]  In fact, Plaintiff conceded in his deposition that he expected it would take time before employees would get use to using the new pronoun when referring to him. (Plaintiff Depo., 123: 7-24.)

Although Ms. Rhonda Guerrera, Plaintiff's former supervisor, initially used the incorrect gender pronoun, she also corrected another employee afterwards on the correct use of Plaintiff's preferred pronoun.  (Guerrera Depo., 123:19-25; 124: 1-25; 125: 1-4.) Ms. Guerrera had previously known the Plaintiff as a female before he transitioned to a male. (Guerrera Depo., 124:1-25.) An incorrect referral to the prior female pronoun is inevitable in the course of workplace conversations between employees who have known each for years.  Indeed, even Plaintiff's proposed witness, Mr.

---

[2] Plaintiff cannot point to one California appellate case or 9th Circuit case with underlying California law to prove that he was harassed, discriminated against or retaliated against simply because of the sporadic, unintentional, and mistaken use of the wrong pronoun by a Progressive employee. Instead, Plaintiff lists inapposite cases are cited, which pertain other states' laws and deal with intentional conduct. Every case cited by the Plaintiff pertains to underlying statutes in the states of Maryland, Illinois, Nevada, Michigan, and Pennsylvania. While Plaintiff refers to the California Code of Regulations Section 11034, which is cited to reference the Civil Rights Department's regulation that an employer must identify an employee in accordance with the employee's gender identity and preferred name, Defendant complied with the regulation.  Defendant changed Plaintiff's preferred name and gender, which Plaintiff concedes. (Plaintiff's Depo., 63:9-25; 192:16-25; 193:6-25.) None of the cases nor the regulation make it unlawful harassment when there is infrequent and unintentional use of the wrong pronoun.  The Court should not adopt the new, heightened standard Plaintiff proposes.

Newell, misgendered Plaintiff.  (*Id* at 80:1-25.) There is no dispute that Ms. Guerrera spoke to Mr. Newell about Plaintiff's preferred pronoun because Mr. Newell used the incorrect pronoun when referring to Plaintiff and she corrected him, so as to prevent future use of the wrong pronoun. (*Id*. at 125:1-25.)  Ms. Guerrera was also aware that Plaintiff had publicly announced his gender transition to a large group of Progressive employees.  (*Id*. at 50:1-25.) Speaking to Mr. Newell about Plaintiff's preferred pronouns was therefore not an act of harassment or retaliation.  Ms. Guerrera was not further "outing" the Plaintiff in any way.

Furthermore, Plaintiff concedes that he worked in the field so that he was not regularly in contact with the supervisors he now accuses of harassment. (Plaintiff's Depo., 33:8-19.)  Taken all together, as Plaintiff suggests, the allegations related to Defendant's alleged conduct are neither severe nor pervasive.

### C.   Plaintiff Failed To Establish He Worked In A Subjectively And Objectively Hostile Work Environment.

The undisputed material facts show that Defendant's alleged conduct did not create a subjectively and objectively hostile work environment.  Plaintiff continued to work for Defendant for approximately *three years* after he announced his transition, until he voluntarily took another job with a higher salary. (Plaintiff's Depo., 158:18-23.) Plaintiff even applied for a supervisor position, to work with the members of management that he now accuses of harassment. In fact, Mr. Hargrove even encouraged him to apply.  (Plaintiff's Depo., 34: 2-4; 35:1-4; 36: 17-25; 37:1.) Plaintiff acknowledged that Defendant saved his life in how it treated him while he was transitioning. (Plaintiff's Depo., 193:6-25; 194:1-10.) Similarly, Defendant repeatedly publicized his transitioning to other employees in the Company and thanked Defendant for its treatment of him.  For example, Plaintiff recorded a video of himself at work in the Santa Clara office, where he discussed gender transition. (Declaration of Alan M. Rivera ("Rivera Decl."), ¶ 8, Exhibit F.)  Plaintiff describes his story about his journey to find his identity and deciding to live openly. *Id.* **Plaintiff also states: "Progressive has taught me to be true to myself…" and that he is "proud to represent the Santa Clara California office because of all their love and support here at the office."** *Id.*  Plaintiff then panned the camera to show the inside the office and all of Plaintiff's nearby coworkers who can be seen and heard saying "we support you

[Plaintiff]!" along with Plaintiff smiling and laughing. *Id.* Despite these facts, Plaintiff argues in his Opposition at page 5, that the video was only supposed to be released to the LGBT Employee Resource Group. However, Plaintiff actually testified in his deposition that the video was going to be for everyone in the company.[3] (Plaintiff Depo., 53:4-13.) Accordingly, the undisputed evidence demonstrates that Plaintiff cannot establish Defendant's conduct created a subjectively and objectively hostile environment.

Based on the foregoing, Plaintiff cannot establish a harassment claim under the FEHA, and this claim should be summarily adjudicated.

## III. PROGRESSIVE'S ROUTINE PERSONNEL MATTERS AND STANDARD OVERSIGHT DO NOT CONSTITUTE "ADVERSE EMPLOYMENT ACTIONS" SUFFICIENT TO SUPPORT PLAINTIFF'S CLAIM AND PLAINTIFF FAILED TO ESTABLISH THAT OTHER SIMILARLY SITUATED EMPLOYEES WERE TREATED DIFFERENTLY.

"Not every employment decision amounts to an adverse employment action." *Strother v. Southern Cal. Permanente Med. Group,* 79 F.3d 859, 869 (9th Cir. 1996). "Requiring an employee to prove a substantial adverse job effect 'guards against both "judicial micromanagement of business practices and frivolous suits over insignificant slights.'" *Akers v. County of San Diego*, 95 Cal.App.4th 1441, 1455 (2002). To be actionable, the alleged adverse employment action must "materially affect the compensation, terms, conditions, or privileges of employment." *Id*. at 1051. Put another way, an adverse employment action "requires a '*substantial adverse change in the terms and conditions of the plaintiff's employment*.'" *Holmes v. Petrovich Dev. Co., LLC,* 191 Cal.App.4th 1047, 1063 (2011), citing *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1454 (2002) (emphasis added). Plaintiff failed to set forth any evidence that he was subjected to an actionable adverse action that can support his claims.

---

[3] Even if Plaintiff had intended for only the ERG to see it and not the Progressive intranet page, which seems unlikely given his testimony, it is still a public disclosure of his transgender status to a large group of employees. Plaintiff cannot engage in such an act and later claim he was "forced" to be outed by his employer.

**A.      Defendant Engaged In Standard Oversight Of Plaintiff No Different Than With Other Employees.**

**1.      MRR Authority Changes Are Standard When Newly Assigned To The Role Under A New Supervisor.**

Plaintiff claims that he suffered an adverse employment action because after being transferred to Mr. Hargrove's group as a Managed Repair Representative ("MRR"), Mr. Hargrove set Plaintiff's repair authority level to $5,000, which was below the authority level Plaintiff had as an Investigator Representative in the Fire and Theft Department.  (Plaintiff Depo., 78:12-19; Porter Decl., ¶ 11, Exhibit F; Castagnetto Depo., 20:22-21:2.)  Following Plaintiff's transfer back to the role of MRR and until his resignation, the maximum authority level for an MRR was $10,000.  *Id.*  An MRR is not automatically given the maximum limit; instead, an MRR's individual authority level is set by their local supervisor who has the discretion to set the limit to any amount up to the MRR limit.  (Castagnetto Depo., 20:13-18.)  An MRR's authority level is based on performance, specifically showing that their estimates are accurate and consistent with Progressive's policies.  (Castagnetto Depo., 23:15-24:2.)

Because Plaintiff had not worked as an MRR for more than two years and the processes had changed, Mr. Hargrove set Plaintiff's authority below the maximum until he became more familiar with Plaintiff's work.  (Plaintiff Depo., 82:7-11; Castagnetto Depo., 26:14-27:14.)  Plaintiff asked Mr. Hargrove why he set Plaintiff's authority limit below $10,000, and Mr. Hargrove explained to Plaintiff that he wanted to make sure Plaintiff's estimates were correct.  (Plaintiff Depo., 78:12-19.)  A few months later and after Plaintiff's public announcement of his transition, Mr. Hargrove raised Plaintiff's authority level. (Plaintiff Depo., 84:4-17.)  Even if Mr. Hargrove is micromanaging his authority levels, this is not a form of harassment as admitted by the Plaintiff.  (Plaintiff's Depo., 258:1-25.)

Progressive engaged in a standard, routine personnel action with regard to Plaintiff's authority levels.  And, Plaintiff admits he went back to a higher MRR authority level after he announced his transition.  Regardless, MRR authority levels have no effect on Plaintiff's employment status or the terms and conditions of his employment.  The MRR authority level changes are a part of the standard oversight of each supervisor and have no bearing on performance assessments.  The fact that Mr. Hargrove was not yet willing to raise the MRR authority level until he had more time to supervise the

Plaintiff is standard feedback in a feedback-driven company.  The levels themselves are not significant or material to Plaintiff's legal claims because they form no basis for an adverse employment action.  There is zero evidence put forward that Plaintiff was treated differently than a similarly-situated individual or that the authority changes were, in any way, connected to Plaintiff's transition.

### 2. Changes To Plaintiff's Work Schedule And Assignments Are Typical Employment Occurrences And Did Not Constitute An Actionable Adverse Employment Action.

Plaintiff's allegations of changed work assignments, schedules or even criticism regarding his job performance (which was also provided to other cisgendered employees) were not adverse employment actions and cannot constitute the basis of an actionable harassment, discrimination or retaliation claim.  While Plaintiff may have believed the alleged conduct unfair, it is not actionable to support his claims.  *See Roby, supra,* 47 Cal.4th at 706.  Again, Plaintiff failed to set forth evidence that his treatment was due to his protected classifications or that he was treated differently than other similarly situated employees.

### B. Plaintiff Was Free To Use Whatever Restroom Facilities He Wanted And Did Not Suffer An Adverse Employment Action.

Plaintiff now claims he was mistreated because he could not use the restrooms he wanted. (Complaint, ¶ 21.)  This never happened.   The restrooms Plaintiff referenced were not even Progressive's restrooms.  They were in a shared lobby at a building.  (Plaintiff's Depo., 85:25; 86:1-25; 87:1-24.)  Regardless, prior to publicly announcing his transition, Plaintiff was given access to both the male and female restrooms.  (Plaintiff Depo., 97:20-98:11.)  It is undisputed that Plaintiff had access to both restrooms before the August 23, 2018, meeting. (Plaintiff Depo., 86:22-87:19, 89:25-90:6, 98:20-24.)  Nothing changed in Plaintiff's access to both sex's bathrooms after announcing his transition. Progressive's transition guidelines even state employees transitioning can use whatever resroom they prefer. (Kosbie Decl., Exh.A, D001391.)

Moreover, *no one* told Plaintiff to use one restroom or another, not even the supervisor he complains about, Mr. Hargrove.  Plaintiff does not recall *anyone* telling him not to use a particular restroom. (Plaintiff's Depo., 85:25; 86:1-25; 87:1-24.)  The restroom facilities available to the Plaintiff is a non-issue and does not constitute and adverse employment action.

**C.    Progressive's Name Change Procedure Is A Standard Personnel Matter That Applies To All Employees Who Want To Change Their Name For Whatever Reason.**

Plaintiff's procedure for instituting name changes is a routine human resources and personnel requirement that is found in many large nationwide companies that manage thousands of employees. The same procedure is used whenever ever the employee wants to change their name, for whatever reason.  (Plaintiff's Depo., 93:2-25; 94:1-25; 95:1-25; 96:1-13.)  There is simply no legitimate basis for Plaintiff to assert that Progressive's procedure amounts to discrimination or that it was applied to him discriminatorily due to his transgender status.  Even though Defendant legally changed his name on all company documents, one of the email addresses was not updated to so reflect. However, he had a second email address that did not use his name at all: A097500@Progressive.com.and he inserted this email address into his email signature. (Plaintiff Depo., Exh.8) Plaintiff's further conceded his "display name" was changed as well. *Id*.

Moreover, Plaintiff was not affected by this minor issue because he continued to use, after announcing his transition, apersonal email address that contained his former female name and not his new male name.  (Declaration of Rosenquist, ¶¶5 through 7, Exhs., Exh.B, C, and D.) If he were so bothered by Progressive's failure to change one of his email addresses, he would not have continued to use a personal email address which reflected his female name, yet he did. The hypocritical allegation of discrimination by Progressive for the exact same activity which Plaintiff himself engaged in does not rise to the level of discrimination.

**D.    Plaintiff's transfer to the Gilroy office was not an adverse employment action.**

In September 2019, Plaintiff was transferred to the Gilroy office, which placed him under the supervision of Rhonda Guerrera. (Plaintiff Depo., 130:19-22.) Ms. Guerrera had previously worked with Plaintiff when he identified as female. (Guerrera Depo., 44:9-12.) Ms. Guerrera also knew about Plaintiff's affiliation as an ambassador with Progressive's LGBT Employee Resource Group ("ERG") and reached out to Plaintiff for materials to share with her group to raise awareness of ERGs for her own employees. (Guerrera Depo., 46:19-48:13.)  Plaintiff's transfer and his assignment to Guerrera is a routine business practice and does not amount to any adverse employment action, nor has Plaintiff even proffered any evidence that the transfer was motivated by discriminatory intent

### E.     Plaintiff Received Overall "Successful" Ratings On His Performance Reviews Both Before And After The Transgender Announcement.

Plaintiff argues in his opposition that his performance evaluation ratings were affected by his transgender status and announcement.  (Opposition, p. 6.)  However, in 2018 Plaintiff was rated as an overall "3.0" and labeled "successful." (Kosbie Decl., Exh.O.)  In 2020, Plaintiff's overall rating was still a 3.0, and labeled "successful."  (Kosbie Decl., Exh.Y.)  Not only did Plaintiff's performance evaluations stay the same rating of "successful," he was never issued any discipline based on job performance.  No adverse action was taken against the Plaintiff by Progressive either before or after his gender transition.

### F.     Ms. Guerrera's supervision of the Plaintiff consisted of standard, routine interactions.

Plaintiff argues that Ms. Guerrera questioned him about his medical appointments.  However, there is no "interference with leave" claims alleged in this case, nor does it amount to harassment or retaliation for a supervisor to ask questions about the attendance of an employee.  Plaintiff admits Progressive never interfered with his medical appointments.

> "Q Right. Were you ever denied time off for medical appointments?
>
> A No."  (Plaintiff's Depo., 154: 18-20.)
>
> …
>
> "Q Were you ever denied a leave of absence by Progressive?
>
> "A No." (Plaintiff' Depo., 156:22-24.)

Progressive is permitted to manage the sick leave and makeup time of employees – these are routine personnel functions.  Moreover, Plaintiff was not denied any leave or time off requests.

## IV.     PLAINTIFF HAS FAILED TO DEMONSTRATE THE STATED REASON FOR ANY ALLEGED ADVERSE ACTION WAS NOT THE TRUE REASON AND WAS A PRETEXT FOR DISCRIMINATION.

To survive summary judgment, Plaintiff must be able to produce sufficient evidence to satisfy his burden of persuasion and "prove by a preponderance of the evidence that the legitimate reasons offered by [Progressive] were not its true reasons but were a pretext *for discrimination*." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) (emphasis added).  In order to defeat Progressive's motion for summary judgment, the evidence of pretext produced by Plaintiff must be "specific and substantial." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1097-98 (9th Cir.

2005).  Progressive is entitled to judgment as a matter of law "if [Plaintiff] create[s] only a weak issue of fact as to whether [Progressive's] reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148; *Guz*, 24 Cal.4th at 356, 362.   Plaintiff must do more than simply assert that Progressive's decision was wrong, mistaken, or unwise. *Guz*, 24 Cal.4th at 363.; *Slatkin v. Univ. of Redlands*, 88 Cal.App.4th 1147, 1157 (2001).   There is no argument in Plaintiff's Opposition which proves any evidence of pretext on the part of Progressive.

Plaintiff asserts that his failure to be promoted is evidence of discrimination.  (Opposition, p.7.) Progressive decided to select a more qualified internal candidate who performed better during the interview process, which is a legitimate non-discriminatory reason for not giving Plaintiff the promotion. (Plaintiff Depo., 42:17-25;  Castagnetto Depo., 39:12-40:4, 43:24-44:2.)  In order to establish his discrimination claim, Plaintiff must set forth evidence that Progressive's reason for not promoting him is pretextual and the real reason was discrimination.  *Reeves*, 530 U.S. at 148; *Guz*, 24 Cal.4th at 356, 362.  Plaintiff cannot meet his burden.

Plaintiff does not have the "specific and substantial" evidence of pretext necessary to defeat Progressive's motion for summary judgment on his discrimination claim based on failing to be selected for the supervisor role (and the temporary reduction in authority level and work assignments, to the extent they are found to be adverse actions notwithstanding the legitimate, non-discriminatory reasons offered for the same).  *See Coghlan,* 413 F.3d 1090, at 1097-98.  Plaintiff's evidence must demonstrate that Progressive's reason for any adverse employment action is both false and that intentional discrimination based on his gender identity and/or gender expression is the real reason for the adverse action.  *Reeves*, 530 U.S. at 142; *Guz*, *supra,* 24 Cal.4th at 356, 361.  "Temporal proximity alone is not sufficient to raise a triable issue as to pretext once an employer has offered evidence of a legitimate, nondiscriminatory reason for the [adverse employment action]."  *Rey v. C & H Sugar Co.*, 609 Fed. Appx. 923 (9th Cir. 2015) (quoting *Arteaga v. Brink's, Inc.*, 163 Cal.App.4th 327, 353 (2008).  Pretext is typically demonstrated where a plaintiff offers evidence that "the employer has offered shifting, contradictory, implausible, uninformed, or factually baseless justifications for its actions." *Guz*, 24 Cal.4th at 363.  Plaintiff has no such evidence to satisfy his burden.

1    Plaintiff must do more than simply assert that Progressive's decision was wrong, mistaken, or

2    unwise. *Guz*, 24 Cal.4th at 363.; *Slatkin v. Univ. of Redlands*, 88 Cal.App.4th 1147, 1157 (2001).

3    Plaintiff simply argues that he had more experience than the employee who got the job, but does not

4    dispute the reason Defendant gave for promoting that person. (Plaintiff Depo., 42: 17-25.) Plaintiff

5    cannot demonstrate that he was more qualified than the person who did get the position as he testified

6    that the individual who received the position was "[a]bsolutely" qualified for the role. (Plaintiff Depo.,

7    42:17-25.)  Moreover, despite his argument in the Opposition that he claims to have more "seniority"

8    than the candidate selected, there is no evidence in this case that Progressive maintains any form of a

9    seniority system or that "seniority" is a factor in promotional decisions.  Any contention by Plaintiff

10   that Progressive was unwise in its decision to not select Plaintiff for the supervisor role is insufficient

11   to raise an inference of pretext in the face of the plentiful evidence of the legitimate reason that

12   Progressive has offered.  *See Guz*, 24 Cal.4th at 358.

13   **V.    PLAINTIFF HAS FAILED TO DEMONSTRATE ANY RETALIATORY CONDUCT**
14   **FOLLOWING HIS INTERNAL AND EEOC COMPLAINTS AND ANY**
     **CONNECTION BETWEEN HIS COMPLAINTS AND ADVERSE EMPLOYMENT**
15   **ACTIONS.**

16          Plaintiff made his initial complaint to Defendant's human resources department on October 2,

     2019. (Opposition, p.10.) Plaintiff did not file his complaint with the EEOC until March 10, 2020.
17
     (Rosenquist Decl., ¶4.)  While on leave, he then filed two more complaints in 2020. (Opposition, p.11.)
18
     The alleged conduct that Plaintiff claims was harassing or discriminatory occurred before these dates.
19
     (Plaintiff Depo., 157:22-25; 158:1-8.)  In fact, Plaintiff was on a leave of absence for much of the time
20
     after he made the complaints so that it would not have been possible for him to have suffered from
21
     retaliatory conduct after he made his complaints. Consequently, Plaintiff cannot establish his
22
     retaliation claim.  *See Ramos v. Roche Products, Inc.,* 936 F2d 43, 46 (1st Cir. 1991) (failure to receive
23
     promotion not retaliatory because it occurred before plaintiff participated in EEOC proceeding).
24

25   **VI.   PROGRESSIVE OBJECTS TO THE DECLARATIONS OF TORIA THOMAS AND**
         **CHRIS NEWELL AND ASKS THIS COURT TO STRIKE THEIR TESTIMONY.**

26          According to the Federal Rule of Evidence 602, a witness may testify to a matter only if

27   evidence is introduced sufficient to support a finding that the witness has personal knowledge of the

28   matter. *Horta v. Sullivan*, 4 F.3d 2, 8, 39 Fed. R. Evid. Serv. 508 (1st Cir. 1993), ("Mere allegations,

1    or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact.")

2    *Bliesner v. Communication Workers of America,* 464 F.3d 910, 913–15 (9th Cir. 2006) (affidavits that

3    were not based upon personal knowledge of the affiants were properly stricken); *Mercantile Nat. Bank*

4    *at Dallas v. Franklin Life Ins. Co.*, 248 F.2d 57, 59 (5th Cir. 1957) (affidavits that were not based upon

5    personal knowledge were improper); *Speedfit LLC v. Woodway USA, Inc.*, 432 F. Supp. 3d 183, 209–

6    11 (E.D. N.Y. 2020) (the plaintiff's summary judgment affidavits were based upon inadmissible and

7    conclusory allegations, and were lacking in foundation, and thus, were insufficient to support the

8    plaintiffs' motion for summary judgment or to defeat the defendant's motion for summary judgment).

9        **A.    The Declaration of Toria Thomas is speculative and lacks foundation.**

10       Defendant requests this Court strike Paragraphs 13, 14, 16 and 17 of Mr. Thomas' Declaration

11   because they are speculative, conclusory, lack foundation and are not based on any personal

12   knowledge.

13       Here, Ms. Thomas speculates in Paragraph 13 that Mr. Hargrove "made" Plaintiff talk about

14   what restroom he would be using.  There is no basis in fact for her factual proposition that Hargrove

15   required this of the Plaintiff.  She attests to no conversation with either Hargrove or the Plaintiff about

16   the content of this statement. There is no foundation for this speculative comment, and she lacks any

17   personal knowledge of what Hargrove required of the Plaintiff during this meeting. Likewise, in

18   Paragraph 14, she speculates that Hargrove and Michael Castagnetto, Plaintiff's former supervisor,

19   "did not express support for him."  This observation is subjective in nature and not based upon any

20   fact that she attests having any knowledge of. Similarly, in Paragraph 16, she makes another

21   speculative comment that Mr. Castagnetto "dismissed Plaintiff's ideas and seemed disinterested in

22   what he had to say."  This comment is vague because it references no fact, date, time or location.  It is

23   also speculative and lacks any foundation as she does not relay any specific facts, nor does she attest

24   to any conversation she personally had with Mr. Castagnetto or the Plaintiff about what she means by

25   this comment. Lastly, Paragraph 17 should be stricken because it lacks any foundation as to date, time

26   or location and is extremely vague.

27       **B.    The Declaration of Chris Newell is Speculative and lacks foundation.**

28       Mr. Newell's Declaration contains many of the same defects. Defendant requests this Court

strike Paragraph 6 through 9 because these statements are conclusory allegations, speculative, not based on personal knowledge and therefore lack foundation.

In paragraph 6, Newell describes a comment made by Guerrera that she disclosed Plaintiff's "Background." He does not state what comment was made by Guerrera, nor does he describe a date, time or location of this comment. He then proceeds to speculate that she meant to single Plaintiff out for his gender transition. Next, in paragraph 7, he attests to instances in which Guerrera misgendered Plaintiff but refers to no facts describing the date, time, location or the actual comment made that is misgendering. This includes the "yeah whatever" comment.

Mr. Newell then asserts on paragraph 8 a vague event in which he claims Guerrera's body language and speech was agitated and aggressive during a conversation with the Plaintiff. However, nowhere does Newell state the content of the conversation, or the date, time location of this conversation. Mr. Newell lacks foundation to attest to such assertions. In fact, Newell never attests that he even spoke with the Plaintiff about this observance, or that he spoke with Guerrera about the conversation. Lastly, Newell's conclusory and vague comment in paragraph 9 that "Guerrera appeared to scrutinize Plaintiff's work more than other Managed Repair Representatives work" lacks any foundation, consists of self-serving speculation and should be stricken.

## VII.   CONCLUSION

For the reasons stated above, all of Plaintiff's causes of action fail and Progressive is entitled to judgment as a matter of law. Progressive therefore respectfully requests full summary judgment be entered in its favor. In the alternative, Progressive moves for partial summary judgment on those claims or issues the Court finds that Plaintiff cannot establish as a matter of law.

Dated: July 24, 2023

ROBERT J. WILGER
JOY C. ROSENQUIST
LITTLER MENDELSON P.C.
Attorneys for Defendant
PROGRESSIVE   CASUALTY   INSURANCE
COMPANY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28