**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>        v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY,<br><br>        Defendant. | Case No.  21-cv-02602-BLF<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF No. 34] |

Plaintiff John Doe filed the present action for harassment, discrimination, and retaliation in violation of California's Fair Employment and Housing Act ("FEHA"). Defendant Progressive seeks summary judgment with respect to all three of Mr. Does' FEHA claims. The motion is DENIED for the reasons discussed below.[1]

**I.  BACKGROUND**

The timeline and major facts are largely undisputed. Plaintiff is a transgender man who worked at Progressive, a large insurance company, from June 2014 until January 2022. Deposition of Plaintiff ("Plaintiff Dep.") 25:7-8, 238:6-25. Throughout his time at Progressive, Plaintiff worked both as a Managed Repair Representative ("MRR") and an Investigator Representative ("IR") and worked for or interacted with several supervisors and managers including Michael Castagnetto, Avery Catabran, Rhonda Guerrera, T.J. Hargrove, Jessette Porter, and Brian Sonke. *Id.* 39:4-7, 54:13-22, 70:14-20, 125:17-20, 144:8-10.

Plaintiff first disclosed his intent to transition from female to male to his supervisor Mr.

---

[1] Defendants also seek to strike the declarations of Toria Thomas and Chris Newell under Federal Rule of Evidence 602 for speculation and lack of foundation. Reply at 13-15. The Court overrules this objection and finds that the declarants have demonstrated sufficient personal knowledge and foundation.

1   Catabran in May 2018. *Id.* 54:13-22. A few months later, Plaintiff transferred to Mr. Hargrove's
2   group and also informed Mr. Hargrove about his gender transition. *Id.* 56:16-24. In late July,
3   Plaintiff informed Mr. Hargrove that he was submitting a story about his gender transition as part
4   of Progressive's National Coming Out Day ("NCOD"). *Id.* 168:19-170:14, 172:1-173:1. As part
5   of the NCOD submission, Plaintiff filmed a video at a Progressive office discussing his job at
6   Progressive and gender transition. *Id.* 51:17-52:10, 53:4-13. If his NCOD submission had been
7   selected, Plaintiff's transgender status would have been publicly disclosed to the entire company,
8   so Plaintiff and Mr. Hargrove discussed the possibility of Plaintiff disclosing his transgender
9   status to his team on an accelerated schedule. Deposition of Jessette Porter Vol. 1 ("Porter Dep.
10  Vol. 1") 94:14-96:12; Porter Decl. ¶ 9, Exhibit D. On August 23, 2018, while on bereavement
11  leave, Plaintiff announced his gender transition to his teammates during a videoconference
12  meeting. Plaintiff Dep. 92:4-93:10, 185:19-186:1, 206:24-207:3.

13  In March 2019, Plaintiff applied for an MRR supervisor position at the suggestion of Mr.
14  Hargrove, and subsequently interviewed with four managers including Mr. Hargrove, Mr.
15  Castagnetto, and Ms. Porter. Plaintiff Dep. 35:20-22, 36:17-37:25, 39:4-7; Porter Dep. Vol. 1
16  84:21-85:3. Plaintiff was not selected for the position. Plaintiff Dep. 42:17-25; Deposition of
17  Michael Castagnetto ("Castagnetto Dep.") 39:12-40:4, 43:24-44:2. In July 2019, Plaintiff
18  requested and was approved for a transfer from Gilroy to Progressive's Modesto office. Plaintiff
19  Dep. 121:4-6. But only two months later, Plaintiff was transferred back to the Gilroy office and
20  placed under the supervision of Ms. Guerrera. *Id.* 130:19-22.

21  Following his transfer back to Gilroy, Plaintiff filed three formal complaints with
22  Progressive. On October 2, 2019, Plaintiff emailed a complaint against Ms. Guerrera to Human
23  Resources claiming gender discrimination and hostile work environment related to Plaintiff's
24  gender transition. Plaintiff Dep. 241:13-18; Porter Dep. Vol. 1., 57:19-58:12; Porter Decl. ¶ 14,
25  Exhibit I at D000402. On January 21, 2020, Plaintiff anonymously filed a second complaint with
26  Progressive's confidential HR hotline against both Mr. Castagnetto and Ms. Guerrera. Plaintiff
27  Dep. 246:2-6; Porter Dep. Vol. 1 64:12-25. And on April 17, 2020, Plaintiff filed a third internal
28  complaint alleging discrimination, harassment, and retaliation. Plaintiff Dep. 253:2-7; Porter Dep.

2

Vol. 1 67:2-10; Deposition of Denise Mora, 33:21-34:15; Porter Decl. ¶ 17, Exhibit L at D000679. Plaintiff stayed at Progressive for a year and a half after filing the third complaint, but began a medical-related leave of absence beginning in August 2021. Plaintiff Dep. 158:10-23. While on that leave of absence, Plaintiff received an offer to work at Travelers Insurance and resigned from Progressive on February 1, 2022. *Id.* 238:2-25.

The Parties make much of Plaintiff's repair authority level, a purported mark of competence and performance that is set by immediate supervisors. Castagnetto Dep. 20:1-21:2. Plaintiff's repair authority increased gradually during his first 18 months at Progressive and reached the maximum allowable amount of $10,000 in November 2015. Porter Decl. ¶ 11, Exhibit F at D003273. His repair authority was subsequently reduced from $10,000 to $5,000 in January 2018 while Plaintiff was an IR in the Fire and Theft Division. *Id.* Plaintiff's authority level was then reraised to $7,500 in December 2018 after Plaintiff returned to his role as an MRR, where it remained until he left Progressive in 2022. *Id.*

Though the Parties do not dispute the preceding timeline and facts, their recitations of the circumstances surrounding these events belong in different factual universes. What follows is a non-exhaustive list of disputed facts and events.

The first point of contention is the August 2018 meeting where Plaintiff announced his transition to his teammates. Defendant contends that Plaintiff had control over when and how he announced his transition, that Plaintiff voluntarily and publicly disclosed it because of the NCOD, and that many coworkers were supportive. ECF No. 34 ("Mot.") at 9, 11; Plaintiff Dep. 108:2-16; Porter Dep. Vol. 1. at 100:19-103:9. Plaintiff disagrees, claiming that the date was forced upon him by management, that he did not want to go through with announcing his transition at the meeting, and that he was under pressure to announce his transition despite being on bereavement leave. ECF No. 43 ("Opp.") at 4-5; Plaintiff Dep. 90:25-91:7, 107:2-8, 108:2-12. The Parties also differ in their understanding as to whether Plaintiff's NCOD video would be released to the LGBT Employee Resource Group within Progressive or the entire company. Opp. at 4-5; Plaintiff Dep. 51:17-52:10, 53:4-13; ECF No. 46 ("Reply") at 4 n.1; Rivera Decl. ¶ 8, Exhibit F.

Plaintiff's transfer from Modesto back to Gilroy is also characterized by the Parties in

vastly different ways. Defendant vaguely suggests that Plaintiff's transfer back to Gilroy was either neutral or voluntary. Mot. at 14 ("Plaintiff was approved to transfer to the Gilroy office, which placed him under the supervision of Rhonda Guerrera"). But Plaintiff claims, and Defendant does not dispute, that Plaintiff did not request the transfer and, more importantly, that Plaintiff specifically requested not to be placed with Ms. Guerrera, against whom Plaintiff later filed his complaints. Plaintiff Dep. 130:19-131:1, 133:1- 5.

Whether Progressive managers improperly scrutinized Plaintiff's medical appointments is also disputed. Defendant claims, and Plaintiff does not dispute, that Progressive never denied time off for Plaintiff's medical appointments or leaves of absence. *Id.* 71:24-72:5, 74:6-11, 154:18-20. But Plaintiff counters that Mr. Hargrove and Ms. Guerrera regularly scrutinized Plaintiff's medical care. *Id.* 71:2-7, 72:9-73:3, 74:12-17, 146:22-147:16, 200:24-201:11; Thomas Decl. ¶¶ 16, 17.

Defendant's scrutiny of Plaintiff's work is also disputed. Defendant claims that any increased scrutiny of Plaintiff's work was unrelated to Plaintiff announcing his transition or in response to Plaintiff's formal complaints. Mot. at 12. And throughout Plaintiff's employment, he consistently received overall performance evaluations of "Meets Expectations" or "Successful" (Porter Decl. ¶ 16, Exhibit A) though Defendant notes "performance issues" that warranted extra scrutiny. Mot. at 12; Porter Decl. ¶ 12, Exhibit G; Plaintiff Dep. 108:2-109:4. And to Defendant's point, Plaintiff's authority level increased a few months after Plaintiff's public announcement of his transition. Plaintiff Dep. 84:4-17. But Plaintiff responds with examples of criticism such as a two-week span where Mr. Hargrove only gave Plaintiff one assignment per day (instead of his usual four to five) and forced him to wait hours for Mr. Hargrove to approve his work. *Id.* 105:17-23, 109:9-11, 188:25-189:3. And Plaintiff notes that while his authority level was increased once, it never returned to $10,000 (where it was before being reduced prior to Plaintiff announcing his transition) for the remainder of his time working for Progressive. *Id.* 79:12-24; Porter Decl. ¶ 11, Exhibit F at D003273.

Regarding the promotion opportunity and interview, Defendant contends that Plaintiff wasn't selected in part because both Mr. Castagnetto and Ms. Porter believed that Plaintiff performed poorly during his interview. Castagnetto Dep. 43:15-20; Porter Dep. Vol. 1 84:21-

4

1   86:5.  But Plaintiff offers a different story, claiming that during the interview, Mr. Castagnetto

2   appeared disgusted at seeing Plaintiff in traditionally masculine attire for the first time and Mr.

3   Hargrove appeared unsupportive of Plaintiff.  Plaintiff Dep. 117:19-119:16.

4        Finally, the Parties dispute how many times and in what manner Plaintiff was misgendered

5   by managers at Progressive.  Defendant states that Plaintiff only testified to two instances where

6   he was misgendered, and that once Plaintiff corrected his coworkers, there was no further issue.

7   Mot. at 24; Plaintiff Dep. 127:19-130:18, 146:5-21.  But Plaintiff contends that he was

8   misgendered at least five times, and presented evidence that Ms. Guerrera did not consider

9   misgendering to be "a big deal."  Thomas Decl. ¶ 17; Plaintiff Dep. 127:19-130:18; Deposition of

10  Rhonda Guerrera ("Guerrera Dep.") 76:23-77:3; Kosbie Decl., Ex. Q; Newell Decl. ¶ 7.[2]

## II.   LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  "The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial."  *Id*.  "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id*.  "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor."  *City of Pomona*, 750 F.3d at 1049.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Id*. (internal quotation marks and citation omitted).

---

[2] Other issues disputed by the Parties but not addressed by the Court include denial of a stepladder, which bathrooms Plaintiff was allowed to use, and the requirements for Plaintiff to change his email address.

## III. DISCUSSION

### A. Claim 1: Harassment in Violation of the FEHA

California Government Code § 12940(j)(1) makes it unlawful for an employer or person to harass an employee on the basis of sex or gender, among other protected characteristics. "'[H]arassment' because of sex includes sexual harassment [and] gender harassment." Cal. Gov. Code § 12940(j)(4)(C). "Sexually harassing conduct need not be motivated by sexual desire." *Id.* "California courts have adopted the [Title VII] standard for hostile work environment sexual harassment claims under the FEHA." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006). To state a claim for a hostile work environment sexual harassment claim, Plaintiff must establish that he "was subjected to sexual advances, conduct, or comments that were (1) unwelcome, (2) because of sex, and (3) sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Id.* at 279 (internal citations omitted). "With respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." *Id.* at 283-84.

"Whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury. In order to remove such a question from the jury on summary judgment, [a] court would have to determine that no reasonable jury could find the conduct at issue severe or pervasive." *Grimes v. Cnty. of Cook*, 2022 WL 1641887, at *9 (N.D. Ill. May 24, 2022) (quoting *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018)). Further, courts analyze the complained-of conduct "as a whole" and "should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Grimes*, 2022 WL 1641887, at *9 (quoting *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 626 (7th Cir. 2018)).

Plaintiff alleges that managers and supervisors at Progressive engaged in the following harassing conduct: forcing Plaintiff to announce his transition and disclose medical information to his coworkers; reducing Plaintiff's job authority and work assignments; scrutinizing his work

product; misgendering Plaintiff; and questioning Plaintiff's medical care. Compl. ¶ 58.

Defendant makes two arguments in its motion for summary judgment: first, that Plaintiff cannot establish that he was treated differently because of his gender identity and/or gender expression; second, that Plaintiff cannot establish that the alleged harassment was so severe or pervasive that it created a hostile work environment. The Court addresses each in turn.

### 1. Treatment Based on Gender Identity and/or Gender Expression

Defendant argues that Plaintiff cannot establish that he was treated differently because of his gender identity and/or gender expression. Mot. at 22. To support this proposition, Defendant discusses only the circumstances surrounding Plaintiff's authority level. *Id.* Defendant's motion does not address other aspects of Plaintiff's claim, such as the missed promotion, unwanted transfer, and scrutiny for medical appointments and time off. Since Defendant failed to address each aspect of Plaintiff's claim, the Court finds that disputed issues of material fact remain.

### 2. Whether Harassment Was so Severe or Pervasive That it Created a Hostile Work Environment

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Fuentes v. AutoZone, Inc.*, 200 Cal. App. 4th 1221, 1227 (2011). "'[A] plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail under the FEHA, if a reasonable person in the plaintiff's position, considering all the circumstances, would not share the same perception.'" *Id.* at 284.

Defendant argues that reviewing Plaintiff's caseload, questioning Plaintiff's files, and assigning Plaintiff various field inspections, are examples of common personnel management tasks that are outside the scope of actionable harassment. Mot. at 23. But "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009), *as modified* (Feb. 10, 2010). And Defendant does not explain why Plaintiff was subjected to increased scrutiny and a reduced workload, or why Plaintiff was transferred back to

7

Gilroy.

Defendant also argues that Plaintiff was never denied time off for medical leave. Reply at 11. But that fact alone is not enough against claims of increased scrutiny of medical leave. Eventual approval of time off does not mean it was not improperly scrutinized, and scrutiny could have created a chilling effect that discouraged Plaintiff from asking for time off. Furthermore, Plaintiff cites to evidence supporting his claim that following the disclosure of his transgender status, his supervisors scrutinized his medical appointments and interfered with those treatments. Plaintiff Dep. 71:2-7, 72:9-73:3, 74:12-17, 146:22-147:16, 200:24-201:11; Thomas Decl. ¶¶ 16, 17.

Defendant also states that any instances of Plaintiff being misgendered by supervisors were isolated incidents and that accidents are inevitable. Plaintiff Dep. 127:19-130:18, 146:5-21. But Plaintiff has provided evidence of five instances where he was misgendered, and evidence that at least one supervisor did not take Plaintiff's gender concerns seriously. Thomas Decl. ¶ 17; Plaintiff Dep. 127:19-130:18; Guerrera Dep., 76:23-77:3; Kosbie Decl. Ex. Q; Newell Decl. ¶ 7. Plaintiff also claims that his status as a transgender man was intentionally and repeatedly disclosed to his co-workers by Ms. Guerrera and Mr. Sonke against Plaintiff's wishes. Plaintiff Dep. 127:19-22, 128:1-11, 129:18-23; Newell Decl. ¶ 6. Defendant responds that Plaintiff's "expectation" that coworkers not share his transgender status "is simply not reasonable" because he made a video in a public space at work as part of the NCOD submission. Reply at 4 n.1.[3] Defendant cites no legal basis for its reasonable expectation test, and the Court elects not to create such a standard.

Defendant further claims that since Plaintiff "worked in the field," he "was not regularly in contact with the supervisors he now accuses of harassment." Reply at 1. But frequency is only one factor and must be weighed against other factors such as the severity of the conduct and interference with Plaintiff's work performance. Here, Plaintiff's allegations of increased scrutiny of his work and medical leave are not lessened by Defendant's general claims of irregular contact.

---

[3] The Parties dispute whether the video was shared with the entire company or just the Employee Resource Group.

The Court finds that Plaintiff has raised sufficient genuine issues of material fact to warrant denial of summary judgment. There are several issues in stark dispute: scrutiny and reduction of Plaintiff's work, the unwanted transfer, scrutiny of Plaintiff's medical treatments, instances of misgendering, and improper disclosure of Plaintiff's transgender status. Plaintiff's evidence, when viewed "as a whole," is more than sufficient to create a factual issue on the question of its pervasiveness. *See Grimes*, 2022 WL 1641887, at *9.

### B.    Claim 2: Discrimination in Violation of the FEHA

For FEHA claims, a plaintiff who has no direct evidence of discriminatory conduct may prove discrimination using indirect or circumstantial evidence, under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000) (holding that, because of similarity between state and federal employment discrimination laws, California has adopted the *McDonnell Douglas* approach to claims of discrimination under FEHA). The *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case of discrimination. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). If the plaintiff establishes a *prima facie* case "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155 (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123-24 (9th Cir. 2000)). If this burden is met, the plaintiff "must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the employee's] termination[ ] are mere pretext for unlawful discrimination." *Id.*

Plaintiff alleges that Progressive managers and supervisors engaged in the following discriminatory conduct: "reducing Plaintiff's authority to authorize insurance claims, reducing Plaintiff's work assignments, and refusing to promote Plaintiff." Compl. ¶ 66. Plaintiff also alleges that "Defendant's intentional and uncorrected misuse of Plaintiffs gender pronouns and failure to update Plaintiffs name in Defendant's email system and elsewhere in its computer system constituted unlawful discrimination." *Id.* ¶ 67.

Defendant focuses its motion on reduction in authority level and promotion, contending that neither constitutes discrimination. Mot. at 25-29. In its opposition, Plaintiff raises a third

adverse employment action, Plaintiff's involuntary transfer to Gilroy.  Opp. at 20-21, 23.

### 1. *Prima Facie* Case of Discrimination

To establish a *prima facie* case, the plaintiff must show: "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz*, 24 Cal. 4th at 355.  "While the plaintiff's *prima facie* burden is 'not onerous,' he must at least show 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion.'"  *Id.* at 355 (alteration in original) (internal citations and quotation marks omitted).  "At summary judgment, the degree of proof necessary to establish a *prima facie* case is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)) (internal quotation marks and italics omitted).

The only element of the *prima facie* case challenged by Defendant is whether Plaintiff suffered an adverse employment action due to his gender identity.  Mot. at 25.

The California Supreme Court has adopted a materiality test to determine whether there has been an adverse employment action. *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1036 (2005).  To be actionable, the alleged adverse employment action must "materially affect the compensation, terms, conditions, or privileges of employment." *Id*. at 1051.  Put another way, an adverse employment action "requires a 'substantial adverse change in the terms and conditions of the plaintiff's employment.'" *Holmes v. Petrovich Dev. Co.*, LLC, 191 Cal. App. 4th 1047, 1063 (2011), citing *Akers v. County of San Diego* (2002) 95 Cal. App. 4th 1441, 1454 (2002).  Some specific examples of adverse employment actions include "discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." *Wilson v. Murillo,* 163 Cal. App. 4th 1124, 1135 (2008).  Furthermore, adverse employment actions need not be analyzed individually where a pattern of discrimination is alleged. *Yanowitz*, 36 Cal. 4th at 1056 ("Enforcing a requirement that each act separately constitute an adverse employment action would subvert the purpose and intent

of" the FEHA.). Instead, "it is appropriate . . . [to] consider plaintiff's allegations collectively." *Id.*

Defendant argues that Plaintiff failed to establish an adverse employment action as required to make his *prime facie* case of discrimination. The Court addresses the two alleged adverse employment actions identified by Defendant and a third raised by Plaintiff: the failure to promote (Mot. at 27), reduction in authority and work assignments (Mot. at 26-27), and Plaintiff's transfer back to Gilroy (Opp. at 20).

First, Plaintiff has submitted evidence supporting a *prima facie* case that Defendant failed to promote him. Defendant does not argue that failure to promote cannot be an adverse employment action, but it does argue that Plaintiff has no evidence that he lost the promotion due to discrimination. However, Plaintiff has submitted evidence that could be credited by the jury that the job interview went poorly because Mr. Castagnetto was hostile to Plaintiff's appearance and Mr. Hargrove was unsupportive, which is indicative of discrimination. Plaintiff Dep. 41:22-42:16, 117:19-119:16. Thus, there is at least a disputed issue of fact on this portion of the *prima facie* case.

Second, Plaintiff has submitted evidence supporting a *prima facie* case that Defendant effectively demoted Plaintiff by increasing scrutiny of Plaintiff's work and decreasing his workload. Defendant argues that Plaintiff cannot establish that the reduction in his authority level and work assignments were adverse employment actions. Defendant contends that reducing Plaintiff's authority level could not be a demotion because it was eventually re-elevated. Mot. at 26-27. But Plaintiff points out that his authority level was never restored to the maximum level of $10,000 he had attained prior to announcing his transition. Opp. at 21; Porter Decl. ¶ 11, Exhibit F at D003273. Plaintiff also presents evidence of a significantly reduced workload and added scrutiny of his work. Plaintiff Dep. at 105:17-23, 109:9-11, 188:25-189:3. Even if it were determined that the reduced authority and extra scrutiny were not adverse employment actions standing alone, that alleged conduct may properly support a claim of a pattern of discrimination. *Yanowitz*, 36 Cal. 4th at 1056.

Third and finally, Plaintiff has submitted evidence supporting a *prima facie* case that Plaintiff's transfer back to Gilroy was an adverse employment action. A "lateral transfer to

11

another job of the same pay and status may constitute an adverse employment action." *Lelaind v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1098 (N.D. Cal. 2008) (citing *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000)). Defendant argues that a transfer is a "routine business practice" (Reply at 10), but provides no explanation as to why the transfer was made without Plaintiff's consent and to a supervisor that Plaintiff specifically requested not to be assigned to.

### 2. Legitimate, Non-Discriminatory Reasons for Adverse Employment Events

Once the plaintiff establishes the *prima facie* case, the burden shifts to the defendant to establish a "legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155. The Court finds that Defendant has met its burden regarding failure to promote and effective demotion, but not the transfer. Defendant explains that Plaintiff did not perform well at his interview, so they hired a different candidate who Plaintiff admits is qualified. Plaintiff Dep. 41:22-42:25; Castagnetto Dep. 39:12-40:4, 43:15-44:20; Porter Dep. 84:10-86:12. Regarding the increased scrutiny and decreased workload, Defendant explains that it was performance related. Mot. at 26; Plaintiff Dep. 77:13-78:19, 83:10-84:9. Defendant also explains that a decrease in Plaintiff's authority level can be explained by a change in role and supervisors. Plaintiff Dep. 82:7-11; Castagnetto Dep. 26:14-27:14. As to the transfer, the Court finds Defendant has not provided an explanation in its papers or at argument as to why Plaintiff was reassigned.

### 3. Pretext to Discrimination

Where the defendant can meet the burden of production, the burden once again shifts back to the plaintiff to show evidence of pretext. To establish pretext, the employee must offer "specific, substantial evidence of [it]." *Wallis*, 26 F.3d at 890 (quoting *Steckl v. Motorola*, 703 F.2d 392, 393 (9th Cir. 1983)) (internal quotation marks omitted). Evidence of pretext must be considered cumulatively. *Chuang*, 225 F.3d at 1129. "The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise unbelievable." *Dominguez-Curry v. Nev. Transp. Dept.* 424 F.3d 1027, 1037 (9th Cir. 2005) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998). An

employer's nondiscriminatory reason is not rebutted where "the employee simply show[s] the employer's decision was wrong, mistaken, or unwise." *Horn v. Cushman & Wakefield W., Inc.*, 72 Cal. App. 4th 798, 807 (1999). But "'very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive,' as 'any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder.'" *Leglu v. Cnty. Of Santa Clara*, No. 13-CV-01376-BLF, 2014 WL 4100599 (N.D. Cal. Aug. 20, 2014) (quoting *Nicholson v. Hyannis Air. Serv.*, 580 F.3d 1116, 1127-28 (9th Cir. 2009)).

Plaintiff has presented enough evidence to meet this low bar. Regarding the interview and promotion, Plaintiff testified that Mr. Castagnetto and Mr. Hargrove were "unsupportive" during the interview, and that Mr. Castagnetto appeared disgusted by Plaintiff's presence. Plaintiff Dep. 117:19-119:16. Furthermore, Defendant's scrutiny of Plaintiff's work and medical appointments after he announced his gender transition, taken collectively with evidence of misgendering and general hostility, raise an issue of fact regarding pretext. *See Yanowitz*, 36 Cal. 4th at 1056. And since the Court finds that Defendant did not meet its burden for showing a non-discriminatory reason for the transfer, Plaintiff need not show pretext for it at this stage. On this basis, the Court finds there are triable issues of fact on the discrimination claim.

### C.     Claim 3: Retaliation in Violation of the FEHA

California Government Code § 12940(h) makes it unlawful "[f]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h).

Like discrimination claims, FEHA retaliation claim may be evaluated using the burden-shifting analysis applied to Title VII cases in *McDonnell Douglas*, 411 U.S. 792. *See Yanowitz*, 36 Cal. 4th at 1042. At step one of the analysis, the plaintiff must make out a *prima facie* case of retaliation. *See id.* "Once an employee establishes a *prima facie* case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." *Id.* "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation

1  drops out of the picture, and the burden shifts back to the employee to prove intentional
2  retaliation." *Id.* (quotation marks and citation omitted).
3  Claim 3 asserts that Plaintiff's decision to lodge complaints in October 2019, January
4  2020, and April 2020 led to retaliation by Defendant. Plaintiff alleges that Defendant's retaliation
5  consisted of "adverse actions, including, but not limited to, refusing to promote Plaintiff." Compl.
6  ¶ 77.
7  Defendant argues that the Progressive managers' decision not to promote Plaintiff could
8  not be retaliation because the interview and job selection happened before Plaintiff made any
9  complaints. Plaintiff expanded on the Complaint in his response by arguing that additional
10 scrutiny of his work and medical appointments constitutes an adverse employment action.

### 1. *Prima Facie* Case of Retaliation

Actionable retaliation includes "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." *Lelaind*, 576 F. Supp. 2d at 1097 (citing *Yanowitz*, 36 Cal. 4th at 1053-54). In *Lelaind*, the court found that "criticizing [the plaintiff] for 'not knowing how to handle her crew,' re-scheduling members of her crew, undermining[] authority, and shutting her out of work meetings" constituted adverse employment actions for purposes of retaliation. *Id.* at 1097-98. And in *Yartzoff v. Thomas*, the Ninth Circuit held that "issuance of a subaverage performance rating" established a *prima facie* case of retaliation. 809 F.2d 1371, 1375 (9th Cir. 1987).

Plaintiff alleges that failure to promote was a specific adverse action. However, Defendant points out that Plaintiff's interview and failed promotion were in March 2019, seven months prior to the first complaint. Plaintiff therefore cannot establish that the failure to promote was an adverse employment action for the purposes of a retaliation claim.

But the Complaint further states that the retaliation was "not limited to" failure to promote. To that end, Plaintiff also testified that Ms. Guerrera continued scrutinizing his files and his medical leave requests and gave Plaintiff lower overall evaluation scores *after* Plaintiff made complaints against her. Plaintiff Dep. 153:8-154:17, 257:4-11; Guerrera Dep. 73:6-22, 93:20-

94:11; Kosbie Decl., Ex. X at D001843; Newell Decl. ¶ 9. The Court admits that this is a closer call than the harassment and discrimination claims, but that there is enough to establish a *prima facie* case in light of *Lelaind* and *Yartzoff*. The Court therefore finds that Plaintiff has established a *prima facie* case of retaliation with respect to scrutiny of his work and medical appointments, but not as to failure to promote.

### 2. Legitimate, Non-Retaliatory Reasons for Adverse Employment Events

The burden shifts to the defendant to establish a "legitimate, nonretaliatory reason for the adverse employment action." *Yanowitz*, 36 Cal. 4th at 1042. Here, Plaintiff established a *prima facie* case of scrutiny of his work and medical appointments. Defendant only addressed its legitimate non-retaliatory reasons for not promoting Plaintiff and suggests that Plaintiff could not have been retaliated against because he spent much of that time on leave. Reply at 13. Defendant seems to rely on its argument that this other alleged conduct did not amount to an adverse employment action and thus Defendant offers no evidence to support its decisions on these other acts. But the Court agrees with Plaintiff that those acts – scrutinizing files and medical leave requests – could be adverse acts to support the retaliation claim, so the burden does not shift back to Plaintiff to prove intentional retaliation. On this basis, the Court finds that Defendant has failed to meet its summary judgment burden as to scrutiny of work and medical appointments.

## IV. ORDER

For the foregoing reasons, it is hereby ordered that:

1. Defendant Progressive's Motion for Summary Judgment on Claim 1 (Harassment) is DENIED.
2. Defendant Progressive's Motion for Summary Judgment on Claim 2 (Discrimination) is DENIED.
3. Defendant Progressive's Motion for Summary Judgment on Claim 3 (Retaliation) is DENIED.

Dated: September 18, 2023

_____
BETH LABSON FREEMAN
United States District Judge

15